**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**$32,400.00, IN UNITED STATES**
**CURRENCY, Defendant,**

**Appeal of Doris CHAPARRO,**
**Claimant–Appellant.**

No. 95–2647.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1996.

Decided April 12, 1996.

Michele M. Fox (argued), Office of the United States Attorney, Civil Division, Appellate Section, Chicago, IL, for Plaintiff–Appellee.

William H. Theis (argued), Chicago, IL, for Claimant–Appellant.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

MANION, Circuit Judge.

Doris Chaparro challenges the forfeiture of proceeds from her drug trafficking on the theory the police illegally seized her. The district court did not clearly err when it concluded the police did not stop Chaparro and that, if they had, they had reasonable suspicion to do so. Therefore, we affirm the district court's denial of Chaparro's motion to suppress evidence seized and statements made.

## I.

In February 1993 Chicago police officer Charles Elliott, a deputized agent of the Drug Enforcement Administration, spoke with an informant who had purchased drugs from a woman later identified as Doris Chaparro, the claimant-appellant in this case. The informant described Chaparro's car, where she lived, and where she dealt drugs— a tavern at Cornelia and Southport Avenues in Chicago. He also gave her name as "Doris." Elliott surveilled the woman's residence and the tavern for about three hours. He saw her drive from her residence to the tavern and talk to a number of persons inside, including some who entered the tavern after double-parking outside. Within half an hour after she arrived she drove back to her residence. A short time later she drove back to the tavern and again engaged in a series of brief conversations with persons in and entering the tavern.

One month later Elliott and other officers returned to the tavern and saw her car parked nearby. They again observed the same conduct. Based upon the informant's statement and his seventeen years of training and experience as a police officer, Elliott surmised that the woman was dealing drugs. On March 18, 1993, Elliott decided that officers should stop the woman to determine her identity. At approximately 6 p.m. that evening, Elliott and other officers set up surveillance outside her house. One hour later she left the house, placed her purse in the trunk of her car, and drove to the tavern. As she began to parallel park on Cornelia Avenue outside the tavern, Elliott pulled his unmarked car in front of hers so their vehicles faced each other. Another officer stopped his unmarked car behind the woman's car at an angle. None of the officers attempted to touch or grab Chaparro or had his gun drawn. Only Elliott got out of his car. He held up his police badge and yelled, "Police, stop." At a later evidentiary hearing Elliott testified he intended to establish the woman's identity at that point, not to arrest her.

Chaparro did not stop. She quickly backed up into the other officer's car, striking its fender. She then shifted gears and accelerated quickly around Elliott's car, ran a stop sign, and fled at speeds of up to 70 miles per hour. Elliott requested assistance from the Chicago police and they pursued her with sirens blaring and lights flashing. During Chaparro's flight her car scraped and collided with a number of parked cars. After a ten-minute chase Chaparro was stopped when four police cars surrounded her and slowed down their vehicles to force her car to stop.

As Elliott attempted to arrest Chaparro for leaving the scene of an accident he saw her try to throw a cigarette package from the car. An agent took the package from Chaparro's hand. Subsequent laboratory tests revealed the package contained 27 grams of cocaine. The police asked Chaparro if she would agree to open the trunk of her car and retrieve her purse. She agreed and did so. Inside the purse were 150 grams of cocaine as well as a large amount of U.S. currency. The police arrested Chaparro on state narcotics charges.

While in jail, a security officer overheard Chaparro on the telephone instructing someone to get rid of $32,000 the person was holding for Chaparro. When interviewed about this statement Chaparro admitted her sister-in-law was hiding that amount of drug money for her because two months earlier Chaparro had had a large amount of cash stolen from her house. Authorities telephoned Chaparro's sister-in-law who turned over $32,420.00 in cash to them. The sister-in-law told authorities Chaparro obtained the money by selling cocaine and then gave it to her.

The United States filed a complaint pursuant to 21 U.S.C. § 881(a)(6) seeking forfeiture of the $32,420.00 involved in Chaparro's narcotics trafficking. Chaparro filed a claim for the money and an answer to the complaint.

Chaparro's counsel later informed the district court and government counsel that Chaparro had fled to avoid prosecution in state court for cocaine distribution. Based upon Chaparro's counsel's admission of her fugitive status, the government requested an automatic decree of forfeiture, which the district court granted. Chaparro appealed this order and this court reversed and remanded in an unpublished order (No. 94–2157, Nov. 7, 1994) based upon *United States v. $40,-877.59 in U.S. Currency*, 32 F.3d 1151, 1157 (7th Cir.1994), which held that the fugitive disentitlement doctrine does not apply to forfeiture proceedings.[1] Chaparro was later taken into custody. She is currently incarcerated on the state criminal charges.

Upon remand the district court held an evidentiary hearing on Chaparro's motion to suppress. At that time the parties agreed this case turned on whether or not the money seized and statements made after Chaparro's arrest should be suppressed. Chaparro argued she was illegally seized on Cornelia Avenue when, while in her car, two police cars "boxed her in." Any evidence gleaned from her after that point, Chaparro asserted, was inadmissible in the government's pursuit of civil forfeiture. The district court entered findings of fact and conclusions of law denying Chaparro's motion to suppress and forfeiting the currency to the government. The lower court distinguished between an actual stop and an attempted stop, finding that when Chaparro struck a police car as she was fleeing, she was not physically seized for Fourth Amendment purposes. The district court also found that when the officers initially attempted to stop Chaparro, if an investigatory stop had occurred, it would have been justified by numerous factors. The district court thus concluded that evidence gleaned from Chaparro at the end of the high speed chase should not be suppressed.

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1345 & 1355, and this court has jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's denial of a motion to suppress for clear error. *United States v. Packer*, 15 F.3d 654, 656 (7th Cir.1994).

## II.

### A.

First, Chaparro argues the police illegally seized her when officers surrounded her at close quarters on Cornelia Avenue. She contends the seizure was an arrest and not a stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that even if it was a *Terry* stop, the officers lacked reasonable grounds for their actions.

"It is well-established that the Fourth Amendment does not prohibit all searches and seizures, but only those that are 'unreasonable.'" *United States v. Nobles*, 69 F.3d 172, 180 (7th Cir.1995) (internal quotes omitted). In *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court applied a two-part test to decide whether a person had been seized such that Fourth Amendment protections are triggered (whether that seizure be an arrest, a *Terry* stop, or otherwise):[2] first, determine whether any physical force simultaneously accompanied the officer's show of authority, and second, determine whether the defendant failed to comply with that show of authority. If no physical force accompanied the show of authority and a person chose to ignore or reject that show of authority, the defendant is not seized until the officer applied physical force and the person submitted to the officer's show of authority. *Id.* at 624–27, 111 S.Ct. at 1548–51. For the Court in

---

1. The question whether the fugitive disentitlement doctrine applies to forfeitures will be argued before the Supreme Court of the United States on April 22, 1996. *United States v. Real Property Located at Incline Village*, 755 F.Supp. 308 (D.Nev.1990), aff'd, 47 F.3d 1511 (9th Cir. 1995), *cert. granted sub nom.*, *Degen v. United States*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996) (1996).

2. *Cf. Nobles*, 69 F.3d at 180 (listing categories of police-citizen encounters and Fourth Amendment requirements imposed on each of them).

*Hodari D.,* the term "seizure" "does not remotely apply ... [to] a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee." *Id.* at 626.

This court has applied this test from *Hodari D.* In *Kernats v. O'Sullivan,* 35 F.3d 1171 (7th Cir.1994), we recognized that "[u]nder this test, a fleeing suspect—even one who is confronted with an obvious show of authority—is not seized until his freedom of movement is terminated by intentional application of physical force or by the suspect's submission to the asserted authority." *Id.* at 1178 n. 4 (citing *Hodari,* 499 U.S. 621, 111 S.Ct. 1547). We have also recognized that neither a police officer who chases a suspect unsuccessfully nor an officer who yells "stop" at a fleeing person has effected a seizure. *Tom v. Voida,* 963 F.2d 952, 957 (7th Cir. 1992) (applying *Hodari D.*).

■ Here, Elliott and the officers did not apply physical force to Chaparro while on Cornelia Avenue. Chaparro initiated the physical contact between her car and the police vehicle during her flight by backing out of her parking spot. Such contact was not a "laying on of hands" by the officers. *See Hodari D.,* 499 U.S. at 626, 111 S.Ct. at 1550. Moreover, the contact between Chaparro's car and the police vehicle behind her did not stop her. Her freedom of movement was not terminated, as she sped off. At best, the police made a strong but unsuccessful attempt to stop Chaparro. This lack of success distinguishes this attempted stop from cases involving an actual stop. *Cf. Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (placement of roadblock with which suspect was stopped constituted seizure).

■ Even on facts arguably more custodial than those before us, courts have not interpreted Hodari D. as Chaparro seeks. In *United States v. Washington,* 12 F.3d 1128 (D.C.Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994), the

District of Columbia Circuit ruled that no seizure occurred when the police ordered a defendant to stop the automobile he was driving. Although the driver initially stopped, he drove off before the police could reach his vehicle. Thus, the defendant did not submit to the police order. *Id.* at 1132 (citing *Hodari D.,* 499 U.S. at 626–27, 111 S.Ct. at 1550–51). In *United States v. Hernandez,* 27 F.3d 1403 (9th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995), the Ninth Circuit ruled that no seizure occurred when police told a defendant to stop and grabbed him while he tried to flee but the defendant did not submit to the officer's show of authority and the officer did not subdue the suspect. "A seizure does not occur if an officer applies physical force in an attempt to detain a suspect but such force is ineffective." *Id.* at 1407 (citing *Hodari D.,* 499 U.S. at 625, 111 S.Ct. at 1550).

If someone backs a car into a police vehicle that blocks one path of egress, that cannot be construed as the intentional application of physical force by police any more than if a person pushes an approaching police officer aside in order to run away. The police officer must initiate the contact before seizure is even considered. Moreover, Chaparro did not in any way submit to any asserted show of authority. An incident in which a driver initiates the "touching" with police and then drives off is not a seizure for Fourth Amendment purposes. Indeed, Chaparro was not stopped; far from it. She exercised her opportunity to leave and fled the police officers at speeds in excess of 70 miles per hour. Consequently, the district court did not clearly err when it determined the police did not seize Chaparro on Cornelia Avenue, and that Chaparro had no claim to Fourth Amendment protection from arrest, a *Terry* stop, or any other type of seizure. Thus, the money and other evidence seized after she was finally arrested cannot be suppressed.[3]

3. This case borders on but does not directly present the question whether the exclusionary rule applies to forfeiture issues on facts such as those before us. Although we recognized some time ago that a claimant to property sought to be forfeited could file a motion to suppress evidence

in a civil forfeiture case, *United States v. $5,608.30 in U.S. Coin and Currency,* 326 F.2d 359, 362 (7th Cir.1964), we are aware of no case which holds that evidence seized in circumstances not connected with the arrest should be suppressed under the exclusionary rule because

**140**

### B.

Chaparro also argues the officers lacked reasonable suspicion under *Terry v. Ohio* when they "stopped" her on Cornelia Avenue.

■ An investigative detention under *Terry*—a brief, nonintrusive stop by police—is a Fourth Amendment seizure but requires only that the officers have specific and articulable facts that give rise to a reasonable suspicion that a person has committed or is committing a crime. *United States v. Withers*, 972 F.2d 837, 841 (7th Cir.1992). When Officer Elliott attempted to establish the identity of the woman named "Doris" on Cornelia Avenue, he had reasonable suspicion, based on considerable evidence, that she had trafficked or was trafficking in drugs: The confidential informant told Elliott he had bought drugs from the woman driving Chaparro's car named "Doris" who sold cocaine from a tavern located on Southport Avenue, a known drug distribution center. Officer Elliott observed Chaparro frequent the tavern and have short conversations with numerous people inside as well as others who stopped in and double-parked outside. Chaparro also left the tavern briefly, went home, and returned to the tavern and continued her series of brief conversations with a number of people. Based upon this evidence, even if Chaparro's initial encounter with police officers had been an actual stop, which we have held it was not, it would have been proper under *Terry v. Ohio* because of the specific and articulated facts supporting Officer Elliott's reasonable suspicion that Chaparro had engaged or was engaging in drug trafficking. *See, e.g., United States v. Randall*, 947 F.2d 1314, 1318 (7th Cir.1991) (limits of *Terry* not exceeded when three police vehicles converged on and stopped suspect's car when car matched description in radio dispatch of car leaving bank and suspect matched description of conspirator).

### III.

The district court's order of forfeiture of the currency to the government is proper.

---

a defendant's arrest was illegal. The seizure here stemmed from Chaparro's telephone con-

Because the police's initial encounter with Chaparro's car was not a stop that would trigger the protections of the Fourth Amendment, and because they had reasonable suspicion to stop her anyway had they done so, the district court's decision is

AFFIRMED.

versation one of the authorities overheard in prison, *not* from the initial arrest.