# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 01-2348

TIFFANY MCCOY,

*Plaintiff-Appellant,*

v.

RAYMOND HARRISON, in his individual capacity,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 97 C 50402— **Philip G. Reinhard**, *Judge.*

_____

ARGUED MARCH 1, 2002—AUGUST 21, 2003

_____

Before FLAUM, *Chief Judge*, BAUER and HARLINGTON
WOOD, JR., *Circuit Judges.*

HARLINGTON WOOD, JR., *Circuit Judge.* Plaintiff Tiffany
McCoy ("McCoy") filed suit in the United States District
Court for the Northern District of Illinois, against Raymond
Harrison ("Harrison"), an animal welfare investigator for
the Illinois Department of Agriculture ("IDA"), alleging

a violation of the Fourth Amendment with Harrison's use of "excessive force."[1] McCoy now appeals the district court's order of summary judgment in favor of Harrison. We affirm.

## I. BACKGROUND

We keep to the basic facts as presented by McCoy. McCoy has lived with her husband in Lee County, in northern Illinois, since 1996. Prior to that, she lived in Ogle County. At both places, she kept approximately thirty dogs, twenty-five[2] of which lived outside the house in separate kennels. McCoy maintains that the dogs at the Lee County residence

---

[1] In the original complaint, Tiffany McCoy and her husband Timothy McCoy filed suit against Raymond Harrison and Keen Hudson, an employee of the Lee County Sheriff's Department. That complaint had a total of fifteen counts pursuant to 42 U.S.C. § 1983, in addition to numerous state law tort claims. The McCoys subsequently filed an amended complaint, dropping Hudson but adding two additional defendants, Todd Atwell, a deputy sheriff of Lee County, and Lee County, a political body. The district court granted a motion to dismiss counts III through XVI, thereby disposing of all claims against Atwell and Lee County. The McCoys then voluntarily dismissed count I, leaving only counts II and VIII, both alleging Harrison's actions violated the Fourth and Fourteenth Amendments. The McCoys filed a second amended complaint with two counts, which were identical to counts II and VIII. Count I alleged Fourth Amendment violations against Harrison in his capacity as a state employee and count II alleged the same violations in his capacity as a member of the Lee County Board. When the district court dismissed count II, Timothy McCoy was dismissed as a plaintiff. After filing a notice of appeal, plaintiffs moved for Timothy McCoy to be dismissed as an appellant.

[2] Assessments vary as to the number of dogs kept on the property, ranging from eighteen to forty. Both plaintiff and defendant seem to agree at the particular time of the incident, McCoy had approximately twenty-five dogs.

were kept in private, non-commercial kennels on her property and were not used for commercial breeding or resale purposes.[3] In fact, McCoy did not have a license to run a commercial kennel or to professionally breed and sell dogs.

Harrison is an animal welfare investigator for the IDA and a member of the Lee County Board ("Board"). As an animal welfare investigator, Harrison regularly inspects breeding kennels, boarding kennels, and pet shops that are licensed by the State of Illinois. He also investigates complaints made to the IDA that relate to animals in both Lee and Ogle counties.[4]

Harrison first met McCoy in 1994 or 1995[5] in Ogle County when he and the animal control warden inspected her property for possible animal welfare violations. Harrison returned to the Ogle County property numerous times to inspect the dogs and kennels before McCoy moved to Lee County. In the course of his visits, Harrison had identified

---

[3] McCoy admits that she bred and sold dogs while in Ogle County.

[4] Harrison acted under state law pursuant § 70/10 of the Humane Care for Animals Act, 510 ILL. COMP. STAT. 70 (1993), entitled "Entry upon premises for investigation of complaints," which provides:

> Upon receiving a complaint of a suspected violation of this Act, any Department investigator, law enforcement official, or an approved humane investigator may, for the purpose of investigating the allegations of the complaint, enter during normal business hours upon any premises where the animal or animals described in the complaint are housed or kept, provided such entry shall not be made into any building which is a person's residence, except by search warrant or court order . . . .

[5] The parties dispute this date but the district court stated "1994 or 1995" in its first memorandum opinion and order, dated May 4, 2000.

himself as being an animal investigator with the IDA, and on one occasion gave McCoy his business card and a book of IDA regulations on maintaining animals.

After McCoy moved to Lee County, Harrison visited the property several times between July 7 and November 7, 1996. He told the McCoys that they needed a variance or a zoning change to operate their kennel, that he was a member of the Lee County Board,[6] and that he would see they never received the necessary zoning. However, the McCoys never submitted an application for a zoning change and were never cited by Lee County for not having the proper zoning.

On August 27, 1996, the Lee County Animal Control Center received a call complaining about the condition of the dogs and kennels on the McCoy property. While the investigation of this complaint was ongoing, on November 7, 1996,[7] at approximately 8:00 a.m., Harrison walked onto the McCoy property. McCoy warned him several times to get off her property. Harrison proceeded to the side and back of the house towards the dog kennels, where he wanted to take pictures of the dogs and their living conditions.

According to McCoy, as Harrison attempted to open the gate of one of the kennels, she reached with her left hand to slam the gate shut, and "[t]hat's when he took his right hand and backhanded me on my face." McCoy fell to the ground and, when she looked up, Harrison was standing over her with "his hand dug into my right arm, four finger-

---

[6] Harrison was a member of the Lee County Board, not the Lee County Zoning Board.

[7] McCoy's original complaint stated the date was December 3, 1996. However, after reviewing official documents and records from the IDA, she conceded in her deposition that she had been mistaken as to the date.

nail marks in my right arm just clenching his hand into my arm." After that, McCoy stated that "he let me go and just walked . . . back down the driveway." Harrison left and McCoy called the police. Although Harrison was investigating McCoy's property as part of the complaint made in August, and stated that he took pictures on November 7, no citation was ever issued on or after November 7 against McCoy. Harrison's final contact with the McCoys was on April 2, 1997, when he returned to the property with a Lee County deputy sheriff, who inspected the kennels while Harrison remained in the car. The two left without incident and no one from the IDA has returned to the property since that date.

McCoy filed a two-count complaint against Harrison, suing him in his individual capacity as an Illinois official under count I and as a Lee County official in count II, alleging that he violated her Fourth Amendment right to be free from unreasonable searches and seizures. On May 4, 2000, the district court denied summary judgment to Harrison on count I and granted summary judgment in Harrison's favor on count II. After further proceedings, on April 20, 2001, the court vacated its prior order from May 4, 2000, and granted summary judgment in favor of Harrison on McCoy's "excessive force" portion of count I, stating that while McCoy may have a state law complaint for battery against Harrison, there was no Fourth Amendment violation because McCoy was never "seized" by Harrison. At the same time, the district court also granted McCoy's oral motion to voluntarily dismiss the "unreasonable search" portion of count I, thereby finalizing the case against Harrison.

McCoy filed a notice of appeal on May 18, 2001. However, on June 4, 2001, the district court issued an order noting that the April 20 order "may not be a final appealable judgment within the meaning of 28 U.S.C. § 1291," because the court had not disposed of McCoy's claims against two other

named defendants. The court requested that McCoy file a brief memorandum as to why the claims against those defendants should not be dismissed for lack of jurisdiction. On June 15, 2001, an amended order was issued dismissing the case, noting that "[a]ll prior orders in this case as to all parties are final and appealable."

## II.  ANALYSIS

We first address the jurisdictional question as to whether there has been a final order entered in this case and, if so, when it was entered. Our review on this issue is *de novo*. *See Trustees of Funds of IBEW Loc. 701 v. Pyramid Elec.*, 223 F.3d 459, 463 (7th Cir. 2000). The June 15, 2001 order was final for purposes of § 1291 in that it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (citation omitted); s*ee Trustees of Funds of IBEW Loc. 701*, 223 F.3d at 463. "A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." FED. R. APP. P. 4(a)(2); *see also FirstTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 274 (1991). Accordingly, we have jurisdiction to hear this appeal even though the notice of appeal was filed prior to the entry of the final order.

A grant of summary judgment is reviewed *de novo*, *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 465 n.10 (1992), considering all of the available pleadings, depositions, transcripts, exhibits, and affidavits in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986) (citing FED. R. CIV. P. 56(c)); *Driebel v. City of Milwaukee*, 298 F.3d 622, 636 (7th Cir. 2002). However, "we are not required to draw every conceivable inference from the record," *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997),

and "mere speculation or conjecture" will not defeat a summary judgment motion. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 591 (7th Cir. 1997).

We affirm a grant of summary judgment if no genuine, triable issue of material fact exists. *Anderson*, 477 U.S. at 247-48 (citing FED. R. CIV. P. 56); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party must then prevail as a matter of law because the nonmoving party, who bears the burden of proof, has failed to make a sufficient showing on an essential element of the case. *Celotex Corp.*, 477 U.S. at 323.

In many excessive force claims brought under 42 U.S.C. § 1983, "the specific constitutional right allegedly infringed by the challenged application of force . . . will be . . . the Fourth Amendment's prohibition against unreasonable seizures of the person, . . . ." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized excessive force standard." *Id.* (citation omitted). Excessive force claims must be analyzed under the Fourth Amendment and its "reasonableness" standard. *Id.* at 395.

"Under 42 U.S.C. § 1983, the [plaintiffs] were required to establish that the [defendants], acting under color of state law, deprived them of a constitutional right, in this instance, their Fourth and Fourteenth Amendment freedom from unreasonable seizure by the State." *Soldal v. Cook County*, 506 U.S. 56, 60 n.6 (1992) (citation omitted). However, "every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation. Some such conduct may simply violate state tort law or indeed may be perfectly legal, though unseemly and reprehensible." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) (citation omitted).

McCoy's claim focuses on the unreasonable seizure prong of the Fourth Amendment. The Supreme Court applies a two-part test to decide whether a person has been seized so that Fourth Amendment protections are triggered; first, it must be determined if physical force was used along with a show of authority, and second, whether or not the person submitted to the show of authority. *California v. Hodari D.*, 499 U.S. 621, 624-26 (1991). There must be "an intentional acquisition of physical control," *Brower v. Inyo County*, 489 U.S. 593, 596 (1989), with the state actor "restrain[ing] the freedom of a person to walk away, [thereby] seiz[ing] that person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (citation omitted).

McCoy has failed to address the second prong under *Hodari D.*, arguing that a seizure occurs with "the slightest application of physical force." McCoy must not only show that her personal liberty had been restrained, *Florida v. Bostick*, 501 U.S. 429, 435-37 (1991), but that she "actually yield[ed] to a show of authority . . . ." *Hodari D.*, 499 U.S. at 629. At no time was McCoy's freedom of movement restrained. There is no question there was some type of altercation, but immediately after, McCoy got up and went into her home, and Harrison left the premises. He made no effort to direct or impede her movements. McCoy herself has testified that Harrison did not try to restrain her after she was knocked down, nor did he order her to remain where she was. He asserted no authority as to her person and she did not in any way submit to a show of authority. *See United States v. $32,400.00*, 82 F.3d 135, 139 (7th Cir. 1996) ("a fleeing suspect—even one who is confronted with an obvious show of authority—is not seized until his freedom of movement is terminated by intentional application of physical force or by the suspect's submission to the asserted authority" (citation omitted)); *see also Hodari D.*, 499 U.S. at 626-27.

"[E]ven unreasonable, unjustified, or outrageous conduct by an officer is not prohibited by the Fourth Amendment if it does not involve a seizure . . . ." *Kernats*, 35 F.3d at 1177; *see also Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992) ("The Fourth Amendment prohibits unreasonable *seizures* not unreasonable, unjustified or outrageous conduct in general." (emphasis in original)). In another Supreme Court case dealing with a state prisoner who brought a § 1983 action against a corrections officer, the Court found that there was no Fourth Amendment violation and, even though there may have been intentional conduct on the part of the state actor, a commonlaw tort suit offered an adequate remedy. *Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984).

McCoy maintains that she was "seized" when Harrison hit her and dug his fingernails into her arm. However, McCoy herself testified that, after the altercation, Harrison "let me go and just walked . . . back down the driveway," and drove away. While Harrison's actions may have caused her injury, there is no evidence to show he intended to or did acquire physical control over her person, *see Brower*, 489 U.S. at 596, nor was there a show of authority and restraint of McCoy's movements. *See Hodari D.*, 499 U.S. at 626. The undisputed facts show that McCoy was not seized within the meaning of the Fourth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998) (citing *Hodari D.*, 499 U.S. at 626, and *Brower*, 489 U.S. 596-97); *see also Cameron v. City of Pontiac*, 813 F.3d 782, 785-86 (6th Cir. 1987) (finding that even with use of deadly force, where there was no actual physical seizure, "the alleged unreasonableness of the officers' conduct cannot serve as a basis for a § 1983 cause of action anchored in the Fourth Amendment," even though the suspect died, from other causes independent of the officers' use of deadly force, while fleeing).

### III. CONCLUSION

The district court was correct in concluding there was no seizure, and therefore, no Fourth Amendment claim. The summary judgment order granted by the district court is AFFIRMED.


A true Copy:

      Teste:


                    _____
                    *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*