In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-4292

EDWARD ACEVEDO,

*Plaintiff-Appellant,*

*v.*

DENNIS CANTERBURY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 0073—**John Corbett O'Meara**, *Judge.*[Œ]

ARGUED NOVEMBER 7, 2005—DECIDED AUGUST 10, 2006

Before POSNER, EASTERBROOK, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* During a late-night confrontation at a lot for towed cars, Chicago Police Officer Dennis Canterbury punched Edward Acevedo in the face, knocking him to the ground. Officer Canterbury then filed an assault charge against Acevedo, leading to his arrest. Acevedo, who is both a Chicago police officer and an Illinois state representative, filed this lawsuit under 42 U.S.C. § 1983, charging Canterbury with the use of excessive force and with false arrest. At the close of Acevedo's case, the district court

---

[Œ] Of the United States District Court for the Eastern District of Michigan, sitting by designation.

entered judgment as a matter of law for Canterbury. We now reverse that judgment.

# I

Many of the pertinent facts are disputed. Since the district court granted Canterbury judgment as a matter of law, we view the evidence in the light most favorable to Acevedo, the nonmoving party, and draw all reasonable inferences in his favor. See *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004).

On August 22, 2001, Acevedo went to a political fundraiser for another state legislator at a bar in Chicago. Late in the evening, two of Acevedo's employees who had also attended the event, Denise Alcantar and Sylvia Idrovo, decided to leave. Once outside of the bar, they realized that the borrowed car they had arrived in was missing and probably had been towed. After telling Acevedo about the problem, Alcantar, Idrovo, Acevedo, and Acevedo's friend and fellow police officer, Aaron DelValle, got into Acevedo's car and drove to a nearby auto pound where they believed the car might be found.

Upon arriving at the pound, Idrovo and DelValle entered an office trailer to inquire about the missing car while Acevedo and Alcantar waited in Acevedo's vehicle. Pound employees informed Idrovo and DelValle that the car had in fact been brought to the lot but that it could not be released to Idrovo because she was not the legal owner. The employees did, however, allow Idrovo to recover some personal items from the car. While Idrovo did so, DelValle stepped outside of the trailer to explain the situation to Acevedo.

Soon thereafter, a police car arrived, apparently summoned by a call from the auto pound supervisor. (The supervisor testified that DelValle and Acevedo's aggressive efforts to retrieve the car caused him to call the police.

DelValle and Acevedo denied that they created any distur-
bance.) Two officers, including Officer Canterbury, got out
of the squad car and approached DelValle, who was still
standing outside the trailer. At this point, Acevedo stepped
out of his own car and approached the three men. After
asking DelValle whether he had been inside the trailer,
Canterbury said to Acevedo and DelValle: "I'm sick of yous
[sic] people doing this shit every night." Acevedo retorted
that he was a Chicago police officer and showed Canterbury
his badge. At this point matters degenerated, as Canterbury
and Acevedo swore at each other. After a few minutes,
Canterbury turned away to walk toward the trailer. For his
part, Acevedo turned to see if Idrovo had returned yet. As
Acevedo continued to look away, Canterbury changed
course and rushed toward him, striking Acevedo hard in the
side of the head with his fist and causing him, as Canter-
bury testified, to "stumble[ ] backwards approximately four
to five feet and [fall] down on his ass."

Acevedo got up off the ground and demanded that a police
supervisor be called. When a sergeant arrived, Acevedo
explained what had occurred, stated that he desired to file
a complaint against Canterbury, and asked that an ambu-
lance be summoned. An ambulance soon arrived and
transported Acevedo to the hospital.

After being treated at the hospital, a different police
sergeant picked up Acevedo and drove him to the station
house, ostensibly so he could file a complaint. To his
surprise, Acevedo was arrested instead and charged with
assault based on a criminal complaint signed by Canter-
bury. After being fingerprinted, photographed, and held
for several hours, Acevedo eventually was released on his
own recognizance. The assault charge was later dismissed
after Canterbury did not appear in court for the scheduled
hearing.

## II

Judgment as a matter of law is appropriate only "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. . . ." FED. R. CIV. P. 50(a). We review a district court's decision to grant judgment as a matter of law *de novo*. See *Zimmerman*, 360 F.3d at 623.

We begin with Acevedo's false arrest claim, since both parties agree on its proper resolution at this juncture. In granting judgment to Canterbury, the district court said that Canterbury could not be held liable for false arrest because he did not make the arrest himself, even though he signed the criminal complaint against Acevedo. As Canterbury acknowledges, the court was mistaken. A police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself. See *McCullah v. Gadert*, 344 F.3d 655, 660-61 (7th Cir. 2003); *Jenkins v. Keating*, 147 F.3d 577, 583-84 (7th Cir. 1998). Although Canterbury still maintains that he is not liable for false arrest as a factual matter, he concedes that he was acting under color of state law at the time he filed the complaint and that Acevedo therefore presented sufficient evidence to reach the jury on this question. We agree.

Since we "review judgments, not opinions," *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1020 (7th Cir. 2004), Canterbury's concession that the district court erred by granting him judgment on Acevedo's false arrest claim is enough by itself to require reversal of the Rule 50 judgment and remand for a new trial. At that point, even if the district court were correct that Acevedo could not maintain his excessive force claim against Canterbury under § 1983, he could still pursue it as a state law battery claim over which the

district court would have supplemental jurisdiction pursuant to 28 U.S.C. § 1367. That said, we find that the district court also erred in granting Canterbury judgment on the excessive force claim.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). In granting Canterbury judgment as a matter of law on Acevedo's excessive force claim, the district court stated that "[e]ven assuming that the Defendant hitting or pushing the Plaintiff was wholly unwarranted, it was not the kind of use of force which [section] 1983 was meant to provide a remedy for. It was not police work. It did not directly attend the arrest or taking into custody of the Plaintiff." We take this statement to mean that the district court did not believe that Acevedo had been seized by Canterbury; it certainly could not have meant that police work is limited to arresting people and taking them into custody.

Canterbury conceded that he was acting under color of state law when he struck Acevedo. Wisely, he does not argue that this means of subduing Acevedo was reasonable. Instead, like the district court, he focuses on whether Acevedo was seized for purposes of the Fourth Amendment. A seizure occurs whenever a police officer "by means of physical force or show of authority . . . in some way restrain[s] the liberty of a citizen. . . ." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). This case involves a seizure through the use of physical force. In such cases, there is a seizure"[w]henever an officer restrains the freedom of a person to walk away," *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), such as by the "laying on of hands or [other] application of physical force," *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Thus, the use of lethal force to apprehend a subject

is a seizure, see *Garner*, 471 U.S. at 4, as is a police road-block that leads to a fleeing suspect's fatal car crash, see *Brower v. County of Inyo*, 489 U.S. 593, 598-99 (1989). A blow by a police officer that immobilizes the recipient easily meets this definition of a seizure. The fact that the restraint on the individual's freedom of movement is brief makes no difference. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) ("The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.").

In arguing otherwise, Canterbury contends that physical force alone cannot constitute a seizure; it is also necessary, in his view, that there be an additional show of authority. It is true that language in some of our previous decisions might, out of context, lend itself to this interpretation. See *McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003) ("[T]o decide whether a person has been seized so that Fourth Amendment protections are triggered . . . it must be determined if physical force was used along with a show of authority. . . ."); *United States v. Ford*, 333 F.3d 839, 844 (7th Cir. 2003) (stating same). But the Supreme Court has held otherwise. *Hodari D.*, 499 U.S. at 626 (a seizure "requires *either* physical force . . . *or,* where that is absent, *submission* to the assertion of authority" (emphasis in original)). The police roadblock in *Brower* did not announce itself as such by being labeled "POLICE" in bold letters. And a police officer acting under color of law need not utter any magic words while restraining a suspect in order for that restraint to constitute a seizure.

This is not to say, of course, that every state law battery by a police officer constitutes a Fourth Amendment seizure. Illinois, like many other states, follows the common law rule that any contact, however slight, may constitute a battery. 720 ILCS 5/12-3 (defining battery to include "physical contact of an insulting or provoking nature" undertaken "by any means"); see also *People v. Peck*, 633

N.E.2d 222, 224 (Ill. Ct. App. 1994) (spitting on another can constitute a battery). Certain types of non-restraining physical contact, without a concomitant showing of authority, are just too minor to constitute a "seizure" for Fourth Amendment purposes without doing violence to that word. See *Leaf v. Shelnutt*, 400 F.3d 1070, 1091 (7th Cir. 2005) (nudging sleeping suspect to wake him not a seizure); *Martinez v. Nygaard*, 831 F.2d 822, 826-27 (9th Cir. 1987) (grabbing individual's shoulder from behind to get his attention not a seizure). In a case like this one, however, where a police officer's use of force causes a man to reel backwards and fall to the ground, a seizure has occurred.

Canterbury also argues that there was no seizure here because Acevedo was able to stand up and walk to his car after he was knocked to the ground. Canterbury analogizes to our decision in *McCoy*, in which a state animal welfare investigator confronted the plaintiff in her yard, knocked her to the ground, and then dug his fingernails into her arm before walking away. 341 F.3d at 603. We declined to find a seizure in that case, explaining that because the plaintiff testified that the officer walked away immediately after the assault and that she herself immediately got up and entered her home, "[a]t no time was McCoy's freedom of movement restrained." *Id.* at 605. But all of these situations must be assessed in their entirety. In *McCoy,* the totality of the circumstances showed that the blow did not detain the plaintiff significantly. Acevedo's case is different. Not only did Canterbury knock him to the ground in a location far away from his home under the general control of the police (the auto pound); the force of that blow caused Acevedo to black out momentarily. Even after he regained consciousness, he claims that he remained in a daze for a time, explaining: "I couldn't move, my head's tingling. . . . I didn't even realize [the police supervisor] had showed up until he approached me and says, 'officer, what happened?'" Based on this testimony, a reasonable jury could have found that Acevedo was seized by Canterbury's blow to his head.

Finally, both parties expend significant energy arguing whether the district court made a procedural error by granting Canterbury's motion for judgment as a matter of law without first requiring him to submit the motion in writing or allowing Acevedo an opportunity to respond. Since we decide this case on the merits, we need not reach this argument. We note, however, that had the court followed the procedure set forth in Rule 50—namely, requiring Canterbury to "specify the judgment sought and the law and the facts on which [he] is entitled to the judgment," FED. R. CIV. P. 50(a)(2)—it likely would not have committed the errors that require us to reverse its judgment today.

## III

For the foregoing reasons, the district court's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*