NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 6, 2014[*]
Decided February 6, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-3630

| | |
|---|---|
| GREGORY J. TURLEY, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 09-829-SCW |
| DAVE REDNOUR, et al., *Defendants-Appellees*. | Stephen C. Williams, *Magistrate Judge*. |

**O R D E R**

Gregory Turley, a longtime inmate at Menard Correctional Center, sued a number of prison employees under 42 U.S.C. § 1983 alleging that they had retaliated against him for filing grievances and lawsuits protesting conditions at the facility. His complaint packages together a hodgepodge of incidents with no apparent connection, but Turley insists that all of those incidents are connected by a grand conspiracy among the defendants. At summary judgment, however, Turley did not dispute the

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeal thus is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

defendants' evidence that their actions were taken independently of any retaliatory motive. We thus affirm the grant of summary judgment for the defendants.

According to Turley, the defendants began targeting him in August 2009 when he wrote Jeanette Cowan, a grievance officer at Menard, complaining that he was "under attack by personnel" at Menard and announcing his "intention to go to Protective Custody" because he feared for his life. Attached to his letter were two grievances dated the previous month. The first grievance concerned Turley's accusation that grievance counselors Frank Lawrence and Jay Hamilton, along with one of their supervisors, Betsy Spiller, had kept him from getting a prison job even though less-qualified inmates had received job assignments. In the second grievance, Turley maligned the education and professional expertise of prison staff, and complained of a multi-year conspiracy to keep him confined to his small cell for excessive periods.

Two days after Turley sent Cowan the letter, a guard gathered many of his belongings and moved him to protective custody in a cell away from the general population. Turley insists that Cowan, Spiller, and Major Dave Rednour conspired to transfer him and did not give him an explanation or an opportunity for a hearing.

A few days after the transfer, Turley received a disciplinary report from Marc Quillman, a guard, accusing him of misusing property, insolence, intimidation, and making threats. Quillman's report recounts that Turley shouted expletives and threw a roll of toilet paper at him while he was distributing supplies to the inmates. The report identifies another guard, Michael Schnicker, as a witness. In contrast, Turley says that Quillman was not even working in his area of the cellhouse that day, and that the guards fabricated the incident to strike back at him for being a "snitch" and "litigator." After a hearing on the disciplinary report, Turley was found guilty of the infraction and moved to disciplinary segregation in a different cellhouse.

After that, in early September 2009, Menard's Chief of Internal Affairs contacted Turley about a list of "declared enemies" that Turley had sent him. That list includes 54 prison employees. After the meeting, says Turley, he was waiting in a holding area to be escorted back to his cell when a third guard, Donald Lindenberg, shouted obscenities at him and twice slammed the steel gate of the holding area with such force that the noise caused temporary deafness and a severe headache. Lindenberg is one of the Menard employees on Turley's list of enemies.

The district court initially denied Turley's request to proceed in forma pauperis on the understanding that he already had incurred three "strikes," see 28 U.S.C. § 1915(g), but we vacated that dismissal after clarifying circuit precedent concerning when prior litigation constitutes a strike, *Turley v. Gaetz*, 625 F.3d 1005, 1012–13 (7th Cir. 2010). On remand the district court screened Turley's complaint, see 28 U.S.C. § 1915A, and dismissed several claims that are not relevant to this appeal. The court allowed him to proceed with his claim that Lawrence, Hamilton, and Spiller had retaliated against him by thwarting his effort to land a prison job, but a magistrate judge, presiding by consent, later dismissed that claim after accepting the defendants' argument that Turley had failed to exhaust his administrative remedies, see 42 U.S.C. § 1997e(a). The judge thought that Turley had failed to assert in a grievance that he was improperly denied a job. The district court also allowed Turley to proceed with his claims that Cowan, Spiller, and Rednour had retaliated against him by moving him to protective custody, that Quillman and Schnicker likewise had engaged in retaliation by lodging the disciplinary report, and that Lindenberg too was retaliating when he slammed the gate. The magistrate judge granted summary judgment for the defendants on those claims.

On appeal Turley argues that the magistrate judge should not have dismissed his claim that he was denied a job assignment as retaliation because, Turley insists, he did include that allegation in one of his grievances. Turley is correct; the magistrate judge misstated that none of his grievances dealt with the denial of a job assignment. One of the grievances that Turley attached to his letter to Cowan accuses Lawrence, Hamilton, and Spiller of preventing him from obtaining a job. But the judge's mistake gets Turley nowhere because he admittedly relies on speculation in asserting that these defendants harbored a retaliatory motive when they made job assignments. At his deposition Turley acknowledged that a job at Menard is a privilege and that too few jobs exist for all inmates. He conceded that his belief that the defendants had engaged in retaliation rests entirely on the fact that he was not assigned a job. That inference is not reasonable. Turley had the opportunity to develop evidence but did not, and his speculation about why he did not get a job would not have defeated summary judgment. See *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (explaining that speculation and hunches about defendants' motives cannot defeat summary judgment); *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (same).

Turley also argues that the chronology of mailing his letter to Cowan and then being transferred to protective custody a few days later suggests that she and Spiller and Rednour conspired to isolate him. Again, that view of the evidence is not reasonable and, in light of what Turley said in his letter, borders on the frivolous. It is

true that Turley had engaged in protected First Amendment activity when he submitted the two grievances attached to his letter and when he filed previous lawsuits against Menard employees. See *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). But Turley did not contradict the defendants' assertion that Rednour approved his transfer to protective custody because he had *asked* to be transferred and not because of a design to retaliate, and neither did Turley dispute the defendants' evidence that a desire to retaliate played no part in the transfer.

Thus, Turley cannot demonstrate a causal connection—required for First Amendment claims of retaliation—between his grievances and lawsuits and the move to protective custody. See *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013); *Watkins*, 599 F.3d at 794. Turley simply cites an operating procedure from the Illinois Department of Corrections assigning wardens the responsibility for deciding whether inmates will be placed involuntarily in protective custody. See ILL. ADMIN. CODE tit. 20, § 501.350(a)–(c). Turley says that Rednour violated this procedure by approving his transfer without consulting the warden. But Turley asserted in his letter to Cowan that his life was in danger and thus he intended "to go to Protective Custody here in the very near future." At summary judgment he did not challenge the defendants' assertion that they understood his letter as requesting a transfer. Moreover, a different operating procedure (although still requiring prompt notice to the warden) mandates that inmates requesting placement in protective custody be transferred "as expeditiously as possible" subject to the warden's later review. See ILL. ADMIN. CODE tit. 20, § 501.320(a), (b). From the record before us, a fact finder could not reasonably conclude that the defendants did anything other than accommodate a request from Turley.

Next, Turley argues that the magistrate judge overlooked his evidence purportedly establishing that Quillman was not in his area of the cellhouse on the day of the alleged disciplinary infraction. Turley had submitted the affidavit of a fellow inmate housed directly below his cell; that inmate insists that he never heard Turley threaten or "cuss out" Quillman, and that Quillman did not even work in their unit that day. All that this affidavit establishes, however, is that the inmate did not hear an encounter which Turley himself does not deny.

Again, Turley's problem is a lack of proof. He asserts repeatedly that Quillman contrived the incident at Rednour's request, but he submitted no evidence from which a finder of fact reasonably could conclude that Quillman lied (or, if he lied, that he was motivated by a desire to retaliate against Turley for engaging in protected activity). In

responding to the defendants' motion for summary judgment, Turley asserted that he knows firsthand of Quillman's motivation to falsify the disciplinary report, but he never explained this contention. Similarly, Turley testified at his deposition that a different inmate had overheard Quillman and Schnicker plotting to falsely accuse him, but he never obtained that inmate's affidavit or other admissible evidence that the conversation between the guards had occurred. Turley could have supplied, but never did, his own affidavit denying the events described in the disciplinary report. See *Hale v. Scott*, 371 F.3d 917, 920 (7th Cir. 2004) (explaining that inmate might have remedy for being disciplined on false charges if he can show that he did not violate prison rules).

The best Turley did was submit with his complaint a declaration averring that Schnicker had admitted to him "that he knew it was wrong" to falsify a disciplinary report. But Quillman, not Schnicker, wrote the disciplinary report, and even accepting that Schnicker is accurately quoted in Turley's declaration, the guard's statement does not create a dispute about whether Quillman fabricated the incident or about Quillman's motivation for writing the report. At most, Schnicker's statement implies that he never witnessed the incident and that Quillman lied in saying that he did.

Turley's last argument is that the magistrate judge erred by "converting" his retaliation claim against Lindenberg to one alleging the use of excessive force in violation of the Eighth Amendment. But Turley overlooks part of the court's discussion; in fact, the court did evaluate his retaliation claim and concluded that slamming a door loudly would not deter a person of ordinary firmness from using the grievance system. Moreover, the court reasoned, Turley himself proved that point by continuing to submit grievances after the day Lindenberg slammed the gate. Turley does not engage with the court's sensible conclusion that Lindenberg's conduct did not rise to retaliation, and his challenge therefore is without merit.

AFFIRMED.