# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1704
_____

Andrea Comfort Martinez,

*Plaintiff - Appellee*,

v.

Ronnet Sasse, in her individual capacity,

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: November 17, 2021
Filed: June 16, 2022
_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Andrea Martinez sued Ronnet Sasse, a law enforcement officer employed by the United States Immigration and Customs Enforcement agency (ICE). Martinez claims that Sasse violated her rights under the Fourth Amendment by effecting a seizure through the use of excessive force. Sasse moved for judgment on the pleadings, and argued that she was entitled to qualified immunity. The district court

denied the motion, reasoning that Martinez's allegations stated a claim for the violation of a clearly established right. We respectfully disagree, and therefore reverse the order.

## I.

According to the complaint, which we accept as true at this procedural juncture, Martinez is an attorney who was representing a woman, Kenia Bautista-Mayorga, and her young son, N.B.M., in immigration proceedings. After Bautista-Mayorga was arrested during a traffic stop, N.B.M. moved to live with Bautista-Mayorga's domestic partner, Luis Alfredo Diaz Inestroza, in Texas.

In June 2018, as Bautista-Mayorga's removal from the United States appeared imminent, Martinez spoke with ICE officials to coordinate reuniting N.B.M. with his mother for deportation. ICE officials told Martinez to bring the boy to an ICE facility parking lot at 3:30 a.m. on June 26, 2018. The officials said that the mother would be waiting in an ICE van to take the child.

At the appointed time, Martinez, Diaz Inestroza, and the child arrived in the parking lot of the ICE facility. A Netflix film crew accompanied the Martinez group to produce a documentary about the family's experience. There was no ICE van in the parking lot. At about 3:40 a.m., Sasse called Martinez and told her that Diaz Inestroza and N.B.M. must come inside the facility to reunite the boy with his mother. Martinez responded that they preferred to remain outside.

Just after the phone call, Sasse and another ICE officer, Everett Chase, turned on the lights in the ICE facility and stood outside near the entrance. Martinez left Diaz Inestroza and N.B.M. at her car and approached the officers to ask about reuniting the boy with his mother. Chase and Sasse informed Martinez that Diaz

Inestroza and the boy would have to come inside the facility. Martinez walked back to her car and began to tell Diaz Inestroza what she had learned.

Chase followed Martinez to her car and stood nearby as Martinez spoke to Diaz Inestroza. Chase then interrupted Martinez, grabbed Diaz Inestroza's arm, and walked him toward the entrance of the ICE facility. Diaz Inestroza was carrying the boy in his arms. Martinez asked Chase to let Diaz Inestroza depart and allow her to take N.B.M. into the building. Chase ignored her and continued to walk Diaz Inestroza and the boy toward the facility.

Sasse was holding open the front door of the facility. Chase pushed Diaz Inestroza and N.B.M. into the facility and walked in behind them. Martinez tried to follow Chase into the building. The complaint alleges that without warning, Chase purposefully backed into Martinez to prevent her from entering the facility. Sasse and Chase then allegedly pushed Martinez back and locked the doors to the facility. As a result of the push, Martinez fell and suffered a fractured right foot, a concussion, lacerations, bleeding, and torn pants. Seconds later, Chase reappeared, unlocked the doors, and instructed Martinez to enter the facility.

Martinez sued Sasse, alleging that the officer used excessive force to seize Martinez, in violation of the Fourth Amendment. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). Sasse moved for judgment on the pleadings based on qualified immunity. The district court denied the motion, reasoning that it was clearly established at the time of the incident that under the allegations in the complaint, Sasse had violated Martinez's rights under the Fourth Amendment by using excessive force. Sasse appeals, and we have jurisdiction to consider her interlocutory appeal of the district court's denial of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We review the district court's decision *de novo*.

II.

A public official like Sasse may assert qualified immunity as a defense to a claim in a civil rights action. To overcome the defense in this case, Martinez must show that Sasse violated a constitutional right, and that the unlawfulness of her conduct was clearly established at the time. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *see Pearson v. Callahan*, 555 U.S. 223, 238 n.1 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 & n.30 (1982). For a right to be "clearly established," the law must be "sufficiently clear" at the time of the officer's conduct "that every reasonable official would understand that what [s]he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (internal quotation omitted). Clearly established law must not be defined at a "high level of generality"; rather, the "violative nature of particular conduct" must be clearly established. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Although the claim here alleges use of excessive force, the parties dispute the threshold question whether Sasse seized Martinez at all within the meaning of the Fourth Amendment. Martinez argues that Sasse effected a seizure when she pushed Martinez to the ground before locking the doors to the ICE facility. Sasse maintains, however, that when an officer's use of force is designed only to repel a person from entering a facility, there is no seizure. On that view, Martinez may have a tort claim against Sasse for assault or battery if the officer used unjustified force, but Sasse did not violate the Fourth Amendment.

As of June 2018, the Supreme Court had explained that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Sasse maintains that her alleged push of Martinez did not "restrain" the lawyer, but served instead to "repel" her from entering the federal facility. She cites *Meggs v. City of Berkeley*, 246 F. App'x 402 (9th Cir. 2007), which involved the use of force by officers who had formed a "skirmish line" around a fire that was set by protestors on

-4-

a city street. *See Meggs v. City of Berkeley*, No. C 01-4033, 2005 WL 483445, at *1 (N.D. Cal. Mar. 2, 2005). When one protestor approached the skirmish line, an officer twice pushed him back with a police baton. *Id.* at *2. When a second protestor thrice advanced toward the line, officers pushed him back using batons and administered a "chop strike" to his right arm while directing him to stay back. *Id.* The Ninth Circuit concluded that the use of force "to repel" the protestors from the skirmish line was not properly analyzed under the Fourth Amendment, because it did not occur in the course of a "seizure." 246 F. App'x at 403.

Martinez responds that a seizure occurs where an officer restrains a person even briefly. She relies on *Torres v. Madrid*, 141 S. Ct. 989 (2021), which held that police seized a suspect for the instant that police bullets struck her, even though the suspect temporarily eluded capture thereafter. *Id.* at 993-94, 999. *Torres*, however, was decided after the encounter at issue here, so cannot be clearly established law for purposes of this case. In any event, *Torres* involved force used to apprehend a suspect, and did not address whether force used only to repel constitutes a seizure.

Martinez invokes *Atkinson v. City of Mountain View*, 709 F.3d 1201 (8th Cir. 2013), where a police officer "bull rushed" a citizen, slammed him backward into the side of a pickup truck, and then handcuffed him. *Id.* at 1205. This court ruled that the evidence was sufficient to establish that a seizure occurred at the moment the police officer charged into the citizen. *Id.* at 1209. In *Atkinson*, however, there was no doubt that the officer applied force to apprehend the citizen, as the man was handcuffed and arrested promptly after the initial use of force. The "bull rush" was not performed to repel the citizen, and the decision did not provide clear guidance on whether force used only for that purpose constitutes a seizure.

Martinez points out that *Atkinson* favorably cited *Acevedo v. Canterbury*, 457 F.3d 721 (7th Cir. 2006), where a police officer punched a man in the face and knocked him to the ground at a parking lot for towed cars. *Id.* at 722-23. Although

the man was able to stand up and walk to his car after the assault, the Seventh Circuit held that the officer's blow constituted a seizure because it briefly immobilized the recipient. *Id*. at 724.

While *Acevedo* may lend support to Martinez's theory, it does not demonstrate clearly established law as of 2018 that Sasse's push to repel Martinez from the ICE facility was a seizure. *Acevedo* is not a decision of the Supreme Court, or of this court, but of a sister circuit. Although this court in *Atkinson* cited *Acevedo* for the proposition that force causing a man to reel backwards and fall constitutes a seizure, *Atkinson* addressed only force used to apprehend an arrestee. The Seventh Circuit's conclusion in *Acevedo* is in tension with the Ninth Circuit's ruling in *Meggs* that baton strikes and other blows that halted the forward progress of protestors did not amount to seizures. Martinez's citations thus fall short of showing a "robust consensus of authority" clearly establishing that the use of force to repel is a seizure under the Fourth Amendment. *See L.G. ex rel. M.G. v. Columbia Pub. Schs.*, 990 F.3d 1145, 1150 (8th Cir. 2021).

After *Atkinson*, moreover, this court addressed a similar question in a case about the use of tear gas to disperse news reporters from a street near the site of "public unrest and protests." *Quraishi v. St. Charles County*, 986 F.3d 831, 834 (8th Cir. 2021). The court held that as of August 2014, it was not clearly established that the tear-gassing by police was a seizure, because "the reporters' freedom to move was not terminated or restricted," and they were simply "dispersed." *Id.* at 840. As with the force used to repel Martinez in this case, the force in *Quraishi* was not employed to apprehend a subject. If there is a constitutional distinction between force used for repulsion that momentarily restricts forward movement and force used for dispersion that impels retreat, the distinction is not so readily apparent that every reasonable officer would have understood it.

For these reasons, we conclude that Martinez has not adequately pleaded that Sasse violated a clearly established right, because it was not clearly established as of June 2018 that Sasse's alleged push was a seizure under the Fourth Amendment. Accordingly, Sasse is entitled to qualified immunity. The order of the district court is reversed, and the case is remanded with directions to dismiss the Fourth Amendment claim against Sasse.

_____