# United States Court of Appeals
## For the First Circuit

No. 07-2196

ASOCIACIÓN DE PERIODISTAS DE PUERTO RICO, Puerto Rico
Journalists Association; OVERSEAS PRESS CLUB OF PUERTO RICO;
NORMANDO VALENTÍN, individual capacity and on behalf of his
respective Conjugal partnership; VÍCTOR SÁNCHEZ, individual
capacity and on behalf of his respective Conjugal Partnership;
JOEL LAGO-ROMÁN, individual capacity and on behalf of his
respective Conjugal Partnership; COSSETTE DONALDS-BROWN,
individual capacity and on behalf of her respective Conjugal
Partnership; VÍCTOR FERNÁNDEZ, individual capacity and on
behalf of his respective Conjugal Partnership; ANNETTE ÁLVAREZ,
individual capacity and on behalf of her respective
Conjugal Partnership,

Plaintiffs, Appellants,

v.

ROBERT MUELLER, in his official capacity as Director of the
Federal Bureau of Investigation; TEN UNKNOWN AGENTS OF THE
FEDERAL BUREAU OF INVESTIGATION, individually and in their
official capacity and on behalf of their Conjugal Partnership;
AGENT KEITH BYER, individually and in his official capacity and
on behalf of his Conjugal Partnership; AGENT LUIS S. FRATICELLI,
individually and in his official capacity and on behalf of his
Conjugal Partnership; AGENT JOSÉ FIGUEROA-SANCHA, individually
and in his official capacity and on behalf of his
Conjugal Partnership,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, <u>Chief Judge</u>,
Torruella, <u>Circuit Judge</u>,
and Selya, <u>Senior Circuit Judge</u>.

——————————

<u>Catherine Crump</u>, with whom <u>Aden J. Fine</u>, ACLU Foundation, <u>Nora Vargas-Acosta</u>, <u>Josué Gonzáles-Ortiz</u>, <u>William Ramírez</u>, ACLU, Puerto Rico National Chapter, was on brief for appellants.
<u>Germán A. Rieckehoff</u>, Assistant United States Attorney, with whom <u>Rosa E. Rodríguez-Vélez</u>, United States Attorney, <u>Nelson Pérez-Sosa</u>, Assistant United States Attorney, Chief Appellate Division, and <u>Isabel Muñoz-Acosta</u>, Assistant United States Attorney, was on brief for appellees.
<u>Lucy A. Dalglish</u>, <u>Gregg P. Leslie</u>, <u>Corinna J. Zarek</u>, and <u>Elizabeth J. Soja</u>, on brief for amicus curiae The Reporters Committee for Freedom of the Press.

——————————

June 18, 2008

——————————

**TORRUELLA**, <u>Circuit Judge</u>.  This appeal involves alleged violations of the First and Fourth Amendments by the Federal Bureau of Investigation ("FBI") against a group of journalists during the execution of a search warrant.  The district court granted summary judgment for the defendants on all claims based on qualified immunity.  After carefully considering the evidence in the record, we affirm summary judgment on all First Amendment claims, but hold that summary judgment was not proper against the individual plaintiffs on their excessive force claims.

## I.  Background

As this case comes to us on summary judgment, we recount the facts in the light most favorable to the nonmoving parties; in this case, those parties are the plaintiffs.  <u>See</u>, <u>e.g.</u>, <u>Franceschi</u> v. <u>U.S. Dep't of Veterans Affairs</u>, 514 F.3d 81, 84 (1st Cir. 2008).

On February 10, 2006, FBI agents executed a search warrant on Liliana Laboy-Rodríguez's residence in a condominium complex in San Juan, Puerto Rico.  Laboy-Rodríguez is a prominent political activist associated with the Puerto Rico independence movement.  News of the search spread quickly; during the course of the day, members of the media descended on the scene and set up to cover the events as they unfolded.  Among those journalists were the individual plaintiffs: Normando Valentín, a television reporter; Victor Sánchez, his cameraman; Cossette Donalds Brown, a radio reporter; Víctor Fernández, a television cameraman; Annette

Álvarez, a television reporter; and Joel Lago-Román, a radio reporter.

Laboy-Rodríguez resides in an apartment within a multi-unit condominium building surrounded by a metal fence and concrete wall. There are two access points in the fence: a pedestrian gate and a vehicular access gate. A private security guard controls the flow of cars and people into the building and parking lot from a booth located between the two gates. During the execution of the search warrant, the FBI agents utilized the building's existing fence and security structure to restrict the flow of people into the area. Access was limited to residents, their guests, and building employees. Members of the media and other curious bystanders congregated outside the metal fence on the street and sidewalk.

Around noon, a U.S. Department of Homeland Security helicopter approached a nearby field. As an FBI agent on the ground signaled to the helicopter, it landed and eight to ten heavily armed agents disembarked. Some of the journalists approached the field hoping to interview the agents as they made their way to the condominium. The agents allegedly pushed away the journalists' microphones, placed a hand in front of the lens of one camera, and raised a rifle in their direction. Unsuccessful at obtaining any statements from the agents, the journalists eventually returned to the outside of the complex. By this point,

the crowd of people outside of the fenced area -- members of the media and the general public, including some local students -- had grown and some were shouting foul language at the agents.

Two hours later, Laboy-Rodríguez's daughter (Natalia Hernández-Laboy) and lawyers arrived and gained admittance to the condominium building. Laboy-Rodríguez came downstairs to meet with them, and she was interviewed by one reporter who had entered the complex. During this time, FBI agents began exiting the building, loading their cars with boxes of seized materials. Soon thereafter, more reporters and other camerapersons entered the gated area, allegedly in response to a "wave" from Natalia Hernández-Laboy, and approached the agents with questions. According to one plaintiff's account, some fifteen to twenty people had entered the gated area.

The FBI agents ordered the group to return outside the gated area. The plaintiffs maintain that they were peaceful at all times and that when ordered to leave, they sought to exit through the pedestrian gate, but were hindered by the agents' attempts to push the crowd through the narrow opening. The plaintiffs assert that without giving them an opportunity to exit, FBI agents physically grabbed and assaulted the reporters and cameramen using pepper spray and metal batons. Several of the plaintiffs aver that they sought and received medical treatment for their injuries.

-5-

On September 20, 2006, the plaintiffs -- several individual journalists and the Asociación de Periodistas de Puerto Rico and the Overseas Press Club of Puerto Rico, two organizations comprised of journalists, photographers, and camerapersons -- filed a complaint against the defendants, FBI Director Robert Mueller and other known and unknown agents of the FBI, alleging violations of their First and Fourth Amendment rights. The defendants moved for summary judgment, claiming protection from the allegations on the basis of qualified immunity. In support of their motion, the defendants submitted an affidavit by FBI Special Agent Keith Byers and a DVD with video footage of the day's events. The court granted the defendants' motion for summary judgment, finding that the plaintiffs' proffered facts had failed to establish a constitutional violation. Plaintiffs appealed.

## II. Discussion

### A. Standard of Review

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Our review of a court's grant of summary judgment is de novo. Whitman v. Miles, 387 F.3d 68, 70 (1st Cir. 2004). Reversal is required if "there existed any factual issues that needed to be resolved before the legal issues could be decided." Sabree v. United Bhd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 399 (1st Cir.

1990) (quoting <u>Rossy</u> v. <u>Roche Prods., Inc.</u>, 880 F.2d 621, 624 (1st Cir. 1989)); <u>see also</u> <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986) (requiring reversal if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party"). At summary judgment, the court's focus is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249.

### B. Defendants' DVD

As an initial matter, there is some question surrounding the admissibility of a Spanish-language DVD submitted by the defendants without any accompanying affidavits. The DVD is a segment of a local news program that played footage of the day's events. In their motion for summary judgment, the defendants relied heavily on the DVD. Citing to the Supreme Court's decision in <u>Scott</u> v. <u>Harris</u>, 127 S. Ct. 1769 (2007), the defendants argued that the video disproves the plaintiffs' factual allegations of interference with news gathering and use of excessive force. Although the plaintiffs did not file a motion to strike the DVD evidence, they disputed the DVD's authenticity in their opposition to summary judgment.[1] Specifically, the plaintiffs asserted that

---

[1] We have declined to adopt a rigid rule requiring a motion to strike in order to preserve an objection to the admissibility of evidence in connection with a summary judgment motion. <u>See</u> <u>Pérez</u> v. <u>Volvo Car Corp.</u>, 247 F.3d 303, 314 (1st Cir. 2004). As long as the objecting party makes the objection known to the court

the DVD appeared to be heavily edited, and the lack of any affidavits attesting to the DVD's authenticity required a finding that the evidence was not proper for consideration at summary judgment.

In its order, the district court noted the plaintiffs' objections to the DVD and stated: "We, therefore, base our discussion on Plaintiffs' version of the facts." Asociación de Periodistas de Puerto Rico v. Mueller, No. 06-1931, slip op. at 12 (D.P.R. June 12, 2007). Although the court did not formally strike the DVD from the record, we think it reasonable to conclude that the district court excluded it in its consideration of the summary judgment motion. Accordingly, we likewise decline to consider the DVD in our review. Cf. Livick v. Gillette Co., 524 F.3d 24, 28 (1st Cir. 2008) ("[W]e will not disturb the district court's [decision to exclude evidence] unless the record demonstrates an error of law or a serious lapse of judgment on the part of the court."). We make no ruling on the admissibility of a properly authenticated DVD on remand.

---

in a reasonable and timely manner and outlines the perceived shortcomings, we care not "[w]hether the dissatisfied party fulfills these requirements by means of a motion to strike or in some substantially equivalent way." Id. As made evident by the court's reference to the plaintiffs' objections, the plaintiffs met this requirement despite having failed to file a formal motion to strike.

### C. Qualified Immunity

In their motion for summary judgment, the defendants seek to avoid liability by invoking the protection of qualified immunity. In this circuit, we generally apply a three-prong test in determining whether that defense is applicable: first, whether there was a violation of a constitutional right; second, whether that constitutional right was clearly established at the time; and third, "whether a 'reasonable officer, similarly situated, would understand that the challenged conduct violated' the clearly established right at issue." Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 59-61 (1st Cir. 2004) (quoting Suboh v. Dist. Attorney's Office, 298 F.3d 81, 90 (1st Cir. 2002)).[2] In accordance with the preferred approach in qualified immunity cases, which is to address the considerations sequentially, we begin by discussing the alleged constitutional violations. See Scott, 127 S. Ct. at 1774 ("If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established.'" (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001))). Here, the plaintiffs assert that the defendants violated their First and Fourth Amendment rights.

---

[2] We have, on occasion, considered these inquiries within a two-step analysis. See, e.g., Santana v. Calderón, 342 F.3d 18, 23 (1st Cir. 2003).

-9-

### 1.  First Amendment Claims

        The plaintiffs allege that the defendants, through the use of force and intimidation, violated the First Amendment because they interfered with the journalists' ability to gather and report on the news while within the gated condominium complex and at the nearby helicopter landing field.  We need not address either the existence or the scope of such a right to gather and report on the news, because in this case the plaintiffs have not demonstrated that they were authorized to enter those properties.  The First Amendment does not grant the press a special right of access to property beyond the public domain.  See, e.g., Richmond Newspapers v. Virginia, 448 U.S. 555, 577-78 (1980) (recognizing a right to report on public trials and describing the First Amendment right as extending to "streets, sidewalks, and parks[, which] are places traditionally open"); see also Wilson v. Layne, 526 U.S. 603, 612-13 (1999).

        The plaintiffs admit that the area within the condominium complex was private property to which access was limited.  Although some of the plaintiffs contend that they entered the gate in response to a "wave" from Natalia Hernández-Laboy, there is no evidence to show that she was a resident of the complex or that she had the authority to invite them into the complex.  Similarly, with respect to the incidents occurring in the nearby field, there is nothing in the record to establish that the plaintiffs had the

-10-

authority to enter the field. It is the plaintiffs' burden to show that they had the right to access both the field and the condominium complex. See Vélez-Díaz v. Vega-Irizarry, 421 F.3d 71, 81 (1st Cir. 2005). Absent evidence establishing the plaintiffs' right to enter the properties, the incidents complained of do not amount to a violation of the First Amendment. See Branzburg v. Hayes, 408 U.S. 665, 684 (1972) ("It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."); cf. Cape Cod Nursing Home Council v. Rambling Rose Rest Home, 667 F.2d 238, 243 (1st Cir. 1981) ("Since the plaintiff[] had no right to be on the property, the police action in removing [him] could not in itself create such a right where none existed before.").

Because the plaintiffs fail to make out a violation of their First Amendment rights, the district court properly granted summary judgment to the defendants based on the first prong of the qualified immunity test. See Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Given the proper dismissal of the First Amendment claims (leaving only the Fourth Amendment claim), the organizational plaintiffs -- the Asociación de Periodistas de Puerto Rico and the Overseas Press Club of Puerto Rico -- were

-11-

properly dismissed from the case.  See United States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998) (noting that the rights secured by the Fourth Amendment are personal and cannot be vicariously asserted by others).  All of the individual plaintiffs' First Amendment claims are also dismissed.

### 2.  Fourth Amendment Claims

The individual plaintiffs also allege violations of their Fourth Amendment right to be free from the use of excessive force. Again, in the context of the defendants' assertion of qualified immunity, we address the first prong of the test: whether the proffered facts, taken in the light most favorable to the plaintiffs, demonstrate a constitutional violation.  As this comes to us on summary judgment, we view the entire record and inquire as to whether a violation "could be made out on a favorable view of the parties' submissions."  Saucier, 533 U.S. at 201.

The six individual plaintiffs allege that upon entering the gated area they were, without provocation, pushed, punched, hit by metal batons, and pepper sprayed in the face by federal agents

and, consequently, suffered injuries.[3]  The affidavits submitted by the plaintiffs confirm these allegations.

Although the use of force in excess of an objective standard of reasonableness is contrary to the Fourth Amendment, <u>see</u> <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386 (1989), the district court concluded that the plaintiffs had failed to establish a constitutional violation.  The district court observed that:

> [F]aced with an angry mob that shouted insults at agents and carried rocks that they later hurled at departing FBI vehicles, Defendants reasonably could have believed that it was necessary to use physical force against members of the crowd that included kicking, punching, and hitting Plaintiffs with batons in order to prevent the situation from escalating into one that would threaten the safety of the agents, the crowd, and innocent bystanders.

<u>Periodistas</u>, No. 06-1931, slip op. at 13.  In so finding, the court erroneously adopted the defendants' characterization of the day's events and failed to assess the facts under the appropriate standard: "whether plaintiff's [Fourth Amendment] claim survives in light of all the uncontested facts <u>and any contested facts looked</u>

_____

[3]  It is unclear whether plaintiffs attempt to allege a Fourth Amendment violation as to conduct that occurred when agents arrived on the helicopter at the nearby field.  The most serious of the allegations is that one of the agents "kept pointing his rifle toward [an individual plaintiff]."  The facts attested to by the plaintiffs describe a tense situation in which a government helicopter landed and deployed several heavily armed federal agents who then made their way to the condominium complex.  This does not make out an excessive force claim.

-13-

at in the plaintiff's favor." Riverdale, 392 F.3d at 62 (emphasis added).

To establish a Fourth Amendment excessive force violation, the plaintiffs must show that the defendants employed force that was unreasonable under the circumstances. See Graham, 490 U.S. at 397. Here, the plaintiffs' submissions reveal that without any provocation or need for force, the defendants assailed them. The plaintiffs contend that they were attempting to exit the gated area, but were impeded by the narrow pedestrian access gate. While bottlenecked in the space between the agents and the gate, the defendants hit some of the plaintiffs and, without warning, applied pepper spray directly into their faces. One plaintiff attests in his affidavit that he fell to the ground during the course of events and an agent intentionally sprayed him in the area around his eyes and caused intense burning and temporary blindness. While still blinded and prone on the ground, an agent grabbed and kicked him, causing additional injuries. According to the plaintiffs' submissions, all of this occurred without any provocation.

As the record presently exists, the defendants have not offered any evidence that contradicts the plaintiff's version of the facts.[4] Rather, the affidavit of Special Agent Byers makes

_____

[4] Although the defendants argue that their response was necessitated by the escalating threat of a crowd that was increasingly angry and armed (with stones), the defendants did not

-14-

only conclusory statements regarding the need for crowd control because the "reporters and crowd members refused to return outside the perimeter despite our repeated instructions that they do so." However, mere obstinance by a crowd, without any evidence of a potential public safety threat or other law enforcement consideration, is insufficient to warrant the show of force that, according to the facts viewed in the light most flattering to the plaintiffs, was exhibited by the law enforcement officers here. See Headwaters Forest Def. v. County of Humboldt, 276 F.3d 1125, 1130 (9th Cir. 2002) (finding unreasonable the use of pepper spray against nonviolent protestors who were "sitting peacefully, were easily moved by the police, and did not threaten or harm the officers"). Furthermore, Byers's affidavit does not even purport to address the individual plaintiffs' specific claims of excessive force and injury. Therefore, on this present record, the plaintiffs have made out a prima facie case that the defendants' conduct violated a constitutional prohibition against excessive force.[5]

---

submit any evidence into the record to support these assertions. Nothing in the record establishes that the crowd was unruly or that the journalists within the gated area created a situation that gave rise to such safety concerns.

[5] Of course, on remand the parties will have the opportunity to supplement the record, which may change our assessment. Our holding is based on the record as it now exists.

Turning to the second prong of the test, we ask whether this constitutional right was "clearly established" at the time such that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. In essence, this prong asks "whether existing case law gave the defendants 'fair warning that their conduct violated the plaintiff[s'] constitutional rights.'" Jennings v. Jones, 499 F.3d 2, 16 (1st Cir. 2007) (quoting Suboh, 298 F.3d at 93). The degree of factual particularity required to provide fair warning varies on the circumstances of the case. See United States v. Lanier, 520 U.S. 259, 271 (1997) (contrasting cases in which a "very high degree of factual particularity may be necessary" with cases in which "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question"). The facts on the record, taken most favorably to the plaintiffs, reveal that without provocation, the defendants beat and applied pepper spray into the faces of the non-threatening plaintiffs to force them to exit the gated area. Thus, our proper inquiry is whether prior law makes clear that the use of such force against a group of non-threatening individuals was excessive.

The Supreme Court's case law clearly establishes beyond any doubt that the "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of

-16-

reasonableness." <u>Saucier</u>, 533 U.S. at 202 (citing <u>Graham</u>, 490 U.S. at 386). While the generalized holding in <u>Graham</u> will not necessarily provide sufficient notice to officers, "in the obvious case, the standards announced in th[at] decision[] . . . [are] sufficient to 'clearly establish' the answer." <u>Whitfield</u> v. <u>Meléndez-Rivera</u>, 431 F.3d 1, 8 (1st Cir. 2005) (citing <u>Brosseau</u> v. <u>Haughen</u>, 543 U.S. 194 (2004)). Indeed, we have held that where an officer's conduct is "such an obvious violation of the Fourth Amendment's general prohibition on unreasonable force . . . a reasonable officer would not have required prior case law on point to be on notice that his conduct was unlawful." <u>Jennings</u>, 499 F.3d at 17; <u>see also</u> <u>DeMayo</u> v. <u>Nugent</u>, 517 F.3d 11, 18 (1st Cir. 2008) (noting that a general constitutional rule may apply to specific conduct "even though 'the very action in question has [not] previously been held unlawful" (quoting <u>Lanier</u>, 520 U.S. at 271)). Based on the plaintiffs' account of the events, this case falls within that category of obvious violations. <u>See</u> <u>Vinyard</u> v. <u>Wilson</u>, 311 F.3d 1340, 1348 (11th Cir. 2002) (use of pepper spray excessive in a case where the individual was handcuffed in the back of a patrol car); <u>Headwaters Forest Def.</u>, 276 F.3d at 1130 (use of pepper spray on peaceful protesters was excessive); <u>Park</u> v. <u>Shiflett</u>, 250 F.3d 843, 853 (4th Cir. 2001) (use of pepper spray from close range on an unarmed and nonthreatening individual was excessive); <u>Adams</u> v. <u>Metiva</u>, 31 F.3d 375, 387 (6th Cir. 1994) (use

of spray on blinded and incapacitated person in a car was excessive).

According to the plaintiffs' account, the agents never gave them an opportunity to exit the area, but simply began hitting them and then, without warning, pepper sprayed them. Indeed, as discussed earlier, some of the individual plaintiffs were sprayed in the face, at close range, even after they had fallen down on the ground. Based on both a "consensus of cases of persuasive authority," Wilson, 526 U.S. at 617, and the general prohibition against excessive force, we conclude that, according to the facts on this present record, the defendants should have been on notice that the actions attributed to them by the plaintiffs were in violation of the Fourth Amendment.

We move next to the third prong of the test and ask "whether an objectively reasonable officer would have believed the conduct was unreasonable." Jennings, 499 F.3d at 19 (emphasis added). This inquiry acknowledges the possibility for "reasonable mistakes":

> It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense. . . . Qualified immunity operates in

-18-

> this case, then, just as it does in others, to protect officers from the sometimes "hazy border between excessive and acceptable force."

Id. at 205 (quoting Priester v. Rivera Beach, 208 F.3d 919, 926-27 (11th Cir. 2000)). The scope of protection is intended to include "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The defendants contend that they reasonably believed that the use of force was appropriate in view of the crowd's provocations and the escalating situation outside of the condominium complex. Yet, the defendants' submissions are exceedingly deficient on this ground and silent with respect to the individual claims of force. The only affidavit submitted by the government, that of Special Agent Byers, makes a passing reference to the crowd's growing size and failure to leave the gated area, and says nothing about the individual plaintiffs' claims of excessive force and injury. Even assuming some general need for crowd control, protection under qualified immunity requires an evaluation of the specific circumstances giving rise to the injuries sustained by each plaintiff, which inevitably will entail individualized assessments of their claims. One could imagine that even if a reasonable officer would have believed it appropriate to use pepper spray in response to an unruly mob (and thus be entitled to immunity), applying pepper spray into the face of an unthreatening journalist lying on the ground might well not be

-19-

protected under the mantle of qualified immunity. <u>The appropriate analysis therefore requires an individualized inquiry of each plaintiff's circumstances.</u>

Given this evidentiary gap, the district court's entry of summary judgment for the defendants on qualified immunity grounds was premature. However, this is not to say that qualified immunity should not be considered later, on a more fully developed record. Thus, we vacate the entry of qualified immunity for the defendants on the individual plaintiffs' claims and remand.

### III.  <u>Conclusion</u>

For the foregoing reasons, we **<u>affirm</u>** the district court's grant of summary judgment on the First Amendment claims. We also **<u>affirm</u>** on the Fourth Amendment claims, except as to the six individual plaintiffs. With respect to these plaintiffs, we **<u>vacate</u>** on the Fourth Amendment claims and **<u>remand</u>** for further proceedings consistent with this opinion. Given that we are remanding, we do not reach the question of whether the plaintiffs have standing to seek injunctive relief, and leave it to the district court to address the issue if appropriate. All parties will bear their own costs.

**<u>It is so ordered</u>**.