[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2010
JOHN LEY
CLERK

No. 09-16281
Non-Argument Calendar

_____

D. C. Docket No. 08-00328-CV-J-25-HTS

AUDREY PATRICIA SNOVER,

Plaintiff-Appellee,

versus

CITY OF STARKE, FLORIDA, et al.,

Defendants,

JASON CROSBY,
TOMMY MURROW,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 30, 2010)

Before EDMONDSON, CARNES and MARTIN, Circuit Judges.

PER CURIAM:

City of Starke, Florida police officers Jason Crosby and Tommy Murrow appeal the district court's denial of their motion for summary judgment on qualified immunity grounds in Audrey Patricia Snover's § 1983 action. Officer Crosby challenges the denial of summary judgment on Snover's false arrest claim. Officer Murrow challenges the denial of summary judgment on Snover's excessive force claim. We address each claim separately.

## I.

"We review de novo a denial of qualified immunity. In an appeal of a denial of summary judgment based on qualified immunity, all evidence must be viewed in the light most favorable to the nonmoving party." Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010) (quotation marks omitted). Because Snover was the nonmoving party, "we set forth the facts, drawn from the evidence presented, in the light most favorable to [her]." Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1265 (11th Cir. 2005). On March 24, 2004, Snover pulled into the parking lot of her doctor's office. She got out of her car and walked to the doctor's office. As she was entering, Snover noticed a police car drive into the parking lot with its lights flashing and park directly behind her car. Snover

2

walked back to her car, and the police officer, Officer Crosby, told her that she had been speeding and asked for her driver's license and registration. Snover handed him both documents and then went back to the doctor's office and told the receptionist that she was getting a speeding ticket. When Snover returned to her car, Crosby told her to get in her car while he wrote the ticket, which she did. After he finished writing the ticket, Crosby asked Snover to sign it, but she refused. Crosby then told Snover: "Ma'am, it's a new law. You have got to sign this ticket" and informed her that he could arrest her if she did not sign it. Snover agreed to sign the ticket and said "I will see you in court."

After that comment, Officer Crosby pulled out his gun but quickly reholstered it. He then handcuffed Snover and pulled her out of the car. Once she was out of the car, he held Snover's right arm over her head, causing her arm to come out of its socket. Crosby then used his body to shove and bang Snover down the side of her car. He placed Snover in the back of his police car and arrested her on the charges of refusal to sign and accept a traffic citation and resisting an officer without violence.

Officer Crosby contends that the district court erred by denying summary judgment on Snover's false arrest claim against him. He argues that Snover's arrest was supported by "arguable" probable cause because she initially refused to

3

sign the speeding ticket. See Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (noting that "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause"). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff." Id. (quotation marks omitted). "The standard is an objective one, and therefore does not include an inquiry in the officers' subjective intent or beliefs." Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010) (quotation marks omitted); see also Koch v. Rugg, 221 F.3d 1283, 1295 (11thCir. 2000) ("The subjective intent of government actor defendants plays no part in qualified immunity analysis" (quotation marks omitted)). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown, 608 F.3d at 735.

Under Florida law, any person cited for a traffic citation "must sign and accept a citation indicating a promise to appear." Fla. Stat. § 318.14(2). "Any person who willfully refuses to accept and sign a summons is guilty of a misdemeanor of the second degree." Fla. Stat. § 318.14(3); see also Robinson v. City of Miami, 867 So. 2d 431, 432 (Fla. 3d DCA 2004) (recognizing that refusal

to accept and sign a citation is a criminal offense). A person convicted of a misdemeanor of the second degree can receive up to 60 days in jail. Fla. Stat. § 775.082(4)(b).

The facts when viewed in the light most favorable to Snover are that she initially refused to sign the speeding ticket but agreed to sign it once Officer Crosby told her that doing so was required by law. Florida Statute § 318.14(3) makes it a crime to "willfully" refuse to sign a speeding ticket. "Willfully means intentionally, knowingly, and purposely." Koch v. State, No. 2D09-1030, 2010 WL 2671287, at *2 (Fla. 2d DCA July 7, 2010) (quotation marks omitted); see also Arnold v. State, 755 So. 2d 796, 798 (Fla. 2d DCA 2000) (explaining that "[i]n the context of criminal violations, 'wilfully' implies that a defendant has acted voluntarily and consciously, not accidentally"); Reliance Ins. Co. v. Lazzara Oil Co., 601 So. 2d 1241, 1242 (Fla. 2d DCA 1992) (noting that for purposes of Florida criminal statutes an act is "willful" if it is intentional; the act "need not be intended to cause harm or violate the law"); Linehan v. State, 442 So. 2d 244, 247 (Fla. 2d DCA 1983) (explaining that "in general intent statutes words such as 'willfully' or 'intentionally,' without more, indicate only that the person must have intended to do the act and serve to distinguish that conduct from accidental (noncriminal) behavior or strict liability crimes"). Snover intentionally chose to

5

disobey Officer Crosby's first instruction to sign the speeding ticket. Based on her initial refusal, a reasonable officer in Crosby's position could have believed that probable cause to arrest Snover existed because Florida law does not appear to require that she have known of the statutory requirement when she failed to comply with it. Although Snover later agreed to sign the ticket, the crime was complete when Snover initially refused to sign it. Crosby's subjective motivation for arresting Snover is irrelevant. For those reasons, the district court erred in denying summary judgment on Snover's false arrest claim.

II.

Snover was also arrested on June 14, 2004 following a separate incident. She brought an excessive force claim against Officer Murrow based on that arrest. Murrow challenges the district court's denial of summary judgment on that claim. As an initial matter, he contends that the district court erred in relying on Snover's deposition testimony in ruling on summary judgment. Officer Murrow argues that testimony was discredited by a DVD recording that Snover made during the incident. Relying on the decision in Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769 (2007), he asserts that the district court should have relied on the DVD instead of Snover's deposition testimony in ruling on summary judgment. See Scott, 550 U.S. at 380, 127 S.Ct. at 1776 (holding that the court should not have relied on a

6

version of events "utterly discredited" by an uncontested videotape but instead "should have viewed the facts in the light depicted in the videotape").

In support of summary judgment, the defendants submitted the DVD to the district court without any accompanying affidavits. Snover disputed the DVD's authenticity and admissibility in her opposition to summary judgment. In ruling on the defendants' summary judgment motion, the district court excluded the DVD from its consideration, stating that it was not "properly admitted . . . into evidence." We review that evidentiary ruling only for abuse of discretion. See Taylor v. Food World, Inc., 133 F.3d 1419, 1422 (11th Cir. 1998). "On motions for summary judgment, [a court] may consider only that evidence which can be reduced to an admissible form." Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005); see also Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., 533 F.3d 1287, 1299 (11th Cir. 2008) ("The grant of summary judgment is appropriate where, upon viewing the admissible evidence and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."); United States v. Jones, 29 F.3d 1549, 1554 (11th Cir. 1994) ("Summary judgment may be based on any evidence which would be admissible at trial."). Authentication is a "condition precedent to

7

admissibility." See Fed. R. Evid. 901(a). Because the defendants merely filed the DVD with the court and did not authenticate it, the district court did not abuse its discretion in declining to consider the DVD. See Asociacion de Periodistas de Puerto Rico, 529 F.3d 52, 56–57 (1st Cir. 2008) (district court properly declined to consider DVD of local news program, which was submitted without any accompanying affidavits attesting to its authenticity, in ruling on defendants' summary judgment motion).

We view the facts now in the record in the light most favorable to Snover. See Townsend, 601 F.3d at 1157. According to her deposition testimony, on June 19, 2004 Snover was driving in the City of Starke and saw a group of police officers gathered on the side of the road. As she was driving by, she saw one of the officers slam a young man up against his car. Snover drove home, got her video camera, and then returned to that location. While filming the officers, Snover stopped her car on the road because a police car door was open, making the road impassible without crossing into another lane. After the officer closed his door, Snover began driving again at the speed limit. Two police cars followed Snover. After she traveled about half a block, the officers turned on their flashing lights. Snover slowed down but did not stop because there was no place to pull over. Officer Murrow, who was driving another police car, stopped his car in front of

8

Snover's, blocking her from driving forward.

Officer Murrow then got out of his car with his weapon drawn and approached Snover. As he did, Murrow called Snover a "bitch." Snover was instructed to get out of the car but remained inside to send a text message to her husband notifying him that she was being arrested and that he needed to come get her at the jail. When Snover did not get out of the car, two other officers on the scene forcibly removed her from the driver's seat. Once she was outside of the car, Officer Murrow grabbed the video camera that Snover was holding in her left hand. "[T]he strap caught [Snover's] fingers" and Murrow "ripped . . . two fingers totally back," causing damage to ligaments and tendons in those fingers. Another officer then handcuffed Snover and put her in the back of a police car. She was arrested on charges of aggravated fleeing and attempting to allude and resisting arrest without violence.

Snover contends that Officer Murrow used excessive force when he forcibly removed the video camera from her hand.[1] The district court agreed and denied Murrow's summary judgment motion, which he contends was error. An excessive force claim is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865,

---

[1]Snover does not contend that any other actions by any of the officers on the scene amounted to a Fourth Amendment violation.

9

1867–68 (1989); see also Brown, 608 F.3d at 733 ("A law enforcement officer receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive."). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Long v. Slaton, 508 F.3d 576, 580 (11th Cir. 2007) (quotation marks omitted); see also Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006) ("Whether the force used is reasonable turns on 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"); Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002).

At the time that Officer Murrow grabbed the video camera from Snover's hand, she was not restrained. Cf. Lee v. Ferraro, 284 F.3d 1188, 1198–99 (11th Cir. 2002) (finding excessive force where officer slammed the plaintiff's head on the trunk of a car after she was handcuffed); Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000) (finding excessive force where officers "repeatedly hit [the plaintiff's] head on the pavement, kicked him, and knocked him unconscious" after he was handcuffed). A reasonable officer in Officer Murrow's position could have

10

believed that the force used was lawful on the basis that the video camera in Snover's hand was a potential weapon that posed a threat to officer safety. See United States v. Gualdado, 794 F.2d 1533, 1535 (11th Cir. 1986) (recognizing that "[a]lmost any object which as used or attempted to be used may endanger life or inflict great bodily harm, or which is likely to produce death or great bodily injury, can in some circumstances be a dangerous weapon") (quotation marks omitted); see also Penley v. Eslinger, 605 F.3d 843, 851 (11th Cir. 2010) (noting that "[t]he government has a weighty interest in protecting . . . police officers from the threat of force"); Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002) (recognizing that "the typical arrest involves some force and injury"); id. (finding no excessive force where officer "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff"). Given Snover's earlier lack of cooperation in failing to get out of her car when ordered to do so, a reasonable officer in Murrow's position could have believed that she would use the video camera in a hostile manner. The district court erred in denying summary judgment on Snover's excessive force claim against Officer Murrow.

**REVERSED AND REMANDED.**

11