BENAVIDES, Circuit Judge,
dissenting in part:
Although I concur in the majority’s treatment of West’s state claim, I respectfully dissent from its analysis of the claim brought pursuant to 42 U.S.C. § 1983. Accepting West’s factual allegations as true, she suffered no seizure that might trigger Fourth Amendment scrutiny. Her claim must therefore be analyzed under the Fourteenth Amendment’s substantive due process standard. And regardless of whether her claim is analyzed under the Fourth or Fourteenth Amendment standard, Davis is entitled to summary judgment. Accordingly, I would affirm the district court’s decision.
I.
I disagree with the majority’s decision to analyze this claim under the Fourth Amendment. The Fourth Amendment proscribes unreasonable searches and seizures. West’s complaint fails to allege either one. She does not claim that she was subject to a Fourth Amendment search when Davis asked her to remove her jacket. She does not argue that she was unreasonably searched when the supervisor ultimately examined her with a magnetic wand. Nor does she contend that her cell phone was seized when Davis forcibly terminated her call and threw the phone into *1074 West’s handbag.[1] Instead, West’s only argument is that Davis seized her person by “wrenching” her hand to retrieve the cell phone. What she describes is not a seizure in the constitutional sense, and is not a violation of the Fourth Amendment even if we assume she was seized.
A.
Detention is the essence of corporal seizure. “When the actions of the police do not show an unambiguous intent to restrain ... a seizure occurs if, ‘in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.’ ” Brendlin v. California, 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)) (punctuation revised). “This is necessarily an imprecise test.” United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir.1991). We consider “whether a citizen’s path is blocked or impeded; whether identification is retained; the suspect’s age, education and intelligence; the length of the suspect’s detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.” Ibid. (citing United States v. Puglisi, 723 F.2d 779, 783 (11th Cir.1984)).
After reviewing the record, I conclude that West was not seized. The allegations do not reveal an unambiguous intent to restrain West, and there was never an objective—or even subjective—belief that this well-educated attorney and former judge was not free to leave the courthouse. Consider Davis’s intent. Davis testified that he only meant to reach West’s cell phone and terminate her call, and West does not argue otherwise. Although Davis’s actual intentions may be subject to debate, the very fact that intent is debatable precludes any finding of unambiguity. And it is immaterial that the physical act itself might have been intentional, or that the act resulted in injury to Davis. The Supreme Court has held that even fatal injury does not constitute seizure where the requisite intent to detain is lacking. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 844-45, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); see also Plumhoff v. Rickard, — U.S.-, 134 S.Ct. 2012, 2022 n. 4, 188 L.Ed.2d 1056 (2014) (confirming continued relevance of Lems)-, Vaughan v. Cox, 343 F.3d 1323, 1329 & n. 5 (11th Cir.2003) (explaining that the dispositive question is whether the force was “meant to stop” the plaintiff). The law is clear that there is no seizure without reasonably perceived detention or an unambiguously manifest intent to physically restrain the object of the officer’s force.
Nor would a reasonable person in West’s circumstances believe herself detained. Other than the alleged assault, none of the Puglisi detention factors is present here. The denied entry itself did not constitute detention: this Court has already explained that there is no detention where a plaintiff chooses to use a restricted-access facility and is then delayed by the terms or conditions of use. See Chandler v. Sec’y of Fla. Dep’t of Transp., 695 F.3d 1194, 1200-1201 (11th Cir.2012) (finding no detention where driver was delayed at toll booth). At the time of the incident, Davis emphasized West’s options, including that she could turn around and exit the courthouse. Further, West never submitted to Davis’s authority, *1075 and in fact repeatedly ignored his instructions. And although West was not free to proceed into the secured areas of the building, she was certainly “free to leave.” Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870. Indeed, West gathered her possessions and left the area so she could make phone calls while she waited for a security supervisor to arrive. In absence of actual or perceived detention, and without the requisite intent on the part of Davis, this dispute lies beyond the reach of the Fourth Amendment.
West nevertheless contends that “the Fourth Amendment standard applies whenever physical force is used against a free citizen—even when the force is not used in the course of an arrest or detention.” See Appellant’s Brief 23. West misunderstands the doctrine. Where there is no arrest, the use of force by a police officer either involves a detainee such that the Fourth Amendment is implicated, or an undetained individual protected by the Fourteenth Amendment. Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir.2006); see also Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (explaining that without detention police conduct is governed by the Fourteenth Amendment). Thus, while West may prefer to think of her status at the courthouse as that of an undetained “free citizen,” she must portray herself otherwise in order to make out a colorable Fourth Amendment claim.
Rather than do so, West instead attempts to redefine governing law. She argues that seizure occurs whenever “an officer lays his hands on a citizen.” See Appellant’s Brief 21 (quoting California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). Yet this assertion is contradicted by the very authority cited. The Hodari Court granted certiorari to determine at what point a police chase evolved into custody. Id. at 623, 111 S.Ct. 1547. The defendant was a youth who fled on foot after being frightened by the appearance of two officers. Ibid. During the ensuing footrace, Hodari discarded a cocaine “rock” shortly before being overtaken and tackled by one of the officers. Ibid. The parties disagreed as to whether the cocaine had been obtained while Hodari was in custody, with Hodari somewhat counter-intuitively arguing that the chase itself was custodial. Id. at 623-24, 111 S.Ct. 1547. The Supreme Court disagreed, explaining that “[a]n arrest requires either physical force (as described above) or, where that is absent, submission to the assertion of authority.” Id. at 625, 111 S.Ct. 1547 (emphasis omitted). The Court, however, made clear that this rule does not supplant Mendenhall’s detention requirement. On the contrary, the Court emphasized that the Mendenhall factor— “the message that the defendant was not free to leave”—is a “necessary, but not a sufficient, condition for seizure.” Id. at 628, 111 S.Ct. 1547. So the case only undermines West’s contention that physical contact alone constitutes seizure.
West’s other authorities do not facilitate her argument. She contends that two cases involving the use of pepper spray support her assertion that force without detention constitutes seizure. Appellant’s Brief 23 (citing Asociacion de Periodistas de Puerto Rico v. Mueller, 529 F.3d 52, 60-61 (1st Cir.2008); Headwaters Forest Def. v. Cnty. of Humboldt, 276 F.3d 1125, 1130 (9th Cir.2002)). Yet the cases both involve detention. In the Ninth Circuit case, pepper spray was used incident to the detention and arrest of environmental advocates who had chained themselves together.[2] The opinion leaves no doubt that *1076 the force was used to effect an arrest. See 240 F.3d at 1191 n. 2 (referring to the “arresting officers”). At least two of the protesters were handcuffed as soon as they were subdued, id. at 1193, and when the protesters asked why they were being sprayed, they were told, “[T]he jail [won’t] accept you like this,” id. at 1195. And although the First Circuit case is unclear as to whether the pepper-sprayed protesters were ultimately arrested, the court emphasized that the plaintiffs were effectively detained by the spray itself, which temporarily renders its objects blind and disoriented. Asociacion, 529 F.3d at 59. So these cases do not suggest that physical force alone implicates the Fourth Amendment. Instead, while the use of force may indeed result in a seizure, the “ultimate inquiry” is whether the officer used force as a means of “coercion that would make [the plaintiff] feel he was not free to leave.” Miller, 458 F.3d at 1258.
The majority resolves the question of seizure by assuming that the physical contact itself constitutes detention. See Maj. Op. at 1070 (“While Davis was applying physical force, albeit for only a brief time, West was surely not free to walk away....”). Yet it is not clear that West actually makes this argument. Her only legal theory seems to be that detention is not a necessary component of seizure. She does not appear to raise an alternative argument that she was, in fact, detained by Davis when he took control of her hand.[3] I recognize that one could argue that—for this brief moment in time—Davis “restrain[ed] [West’s] freedom to walk away.” Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). But even assuming that this argument has been properly asserted, the alleged physical interference did not detain West in any constitutionally meaningful way. Cf. Am. Fed’n Labor v. City of Miami, Fl., 637 F.3d 1178, 1191 (11th Cir.2011) (“Although Lee’s freedom of movement was certainly restrained, she still had the ability to, and indeed did, walk away.”) (referring to a political protestor’s difficulty escaping a police blockade).
Courts recognize that—-in absence of any other circumstantial indicia of detention—the fleeting use of physical force does not implicate the Fourth Amendment. As other circuits have observed, not every assault by an officer constitutes a seizure. Compare McCoy v. Harrison, 341 F.3d 600, 605-06 (7th Cir.2003) (rejecting argument that “seizure occurs with ‘the slightest application of physical force’ ” before finding no seizure where plaintiff and officer “immediately” walked away after physical altercation), with Acevedo v. Canterbury, 457 F.3d 721, 725 (7th Cir.2006) (finding seizure where blow to the head temporarily rendered the plaintiff unconscious). For example, a Pennsylvania man claimed he was seized when a police sergeant grabbed his elbow and berated him, resulting in a sprained shoulder and months of medical treatment. Smith v. Dep’t of Gen. Servs., Pa. Capitol Police Bureau, No. Civ.1:04 CV 0997, 2005 WL 1563505, at *2 (M.D.Pa.2005), aff'd, 181 FedAppx. 327 (3d Cir.2006). The district court rejected his characterization of the *1077 assault as a seizure, granting summary judgment to the defendants after finding no dispute that the plaintiff was promptly able to break free and leave the sergeant’s presence. Id. at *9. The Third Circuit affirmed, holding that “the solitary act of momentarily grabbing Smith’s elbow was not a seizure,” notwithstanding the brief physical restraint and the resulting injury. See 181 Fed.Appx. at 329-330. Even this Court has explained that the “right to be free from such a battery is conferred by Georgia law,” not by the Constitution. Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir.2002) (referring to alleged Fourteenth Amendment violation).
I realize that it is sometimes difficult to distinguish between a tort and seizure. This is a consequence of our “necessarily imprecise” Fourth Amendment framework. De La Rosa, 922 F.2d at 678. It is also where we turn to juries. In another case involving a wrenched arm, the district court found a material dispute as to the extent of the physical contact and whether the alleged grasp was ultimately used to drag the young woman behind a building. Lloyd v. Jefferson, 53 F.Supp.2d 643, 656 (D.Del.1999). That court denied summary judgment and submitted the question of seizure to a jury. Ibid. Here, even accepting West’s account of the incident, the alleged physical contact was momentary, and she was immediately able to gather her things and leave the officer’s presence. She simply was not detained in any constitutionally significant manner. As a consequence, although she may have suffered assault or battery, she was not seized such that her complaint might implicate the Fourth Amendment.
B.
Even if we assume the physical contact to be a form of detention, Davis did not violate the Fourth Amendment. Brief investigatory detention, short of arrest, is permissible where there exists “reasonable suspicion” that “criminal activity may be afoot.”[4] The force used to effect that detention must also be reasonable. Graham, 490 U.S. at 396, 109 S.Ct. 1865. “Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the countervailing governmental interests at stake.” Ibid, (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)) (internal quotation marks and other citations omitted). “Although the facts must be taken in the light most favorable to the plaintiff! ], the determination of reasonableness must be made from the perspective of the officer” at the scene. Troupe v. Sarasota Cnty., Fla., 419 F.3d 1160, 1168 (11th Cir.2005).
Consider, then, the officer’s perspective as evinced by West’s stipulated facts. Deputy Davis saw West walk into the courthouse at 12:55 p.m., in bit of a hurry to get to her 1:00 appearance before a county judge. When she walked through the metal detector, something on her person set off the alarm. At the time, West was wearing a bulky wool pea coat, which Davis assumed was a winter overcoat. Yet *1078 West refused to remove the garment, claiming that doing so would expose her underwear. This reply evoked skepticism from Davis, who could see the neckline and sleeves of what appeared to be a long-sleeved t-shirt under the coat.[5] When Davis asked to see this undershirt, West became confrontational, sarcastically suggesting that Davis “had to be kidding,” and then requesting a supervisor. She then proceeded to make at least two phone calls, notwithstanding requests that she discontinue use of the phone.[6] By the time Davis forcefully ended West’s call, there were other visitors waiting to enter the courthouse.
Taking all these facts together, Davis’s conduct was reasonable. It is well established that courthouse security is of “paramount” importance. Legal Aid Soc. of Orange Cnty. v. Crosson, 784 F.Supp. 1127, 1131 (S.D.N.Y.1992). “[T]he need to protect judicial officers and the steady stream of visitors to the [ ] Court is undeniable.” Ibid. And as West recognizes, a Fulton County judge had been shot to death in the same courthouse a few years earlier, leading to heightened security procedures. Although the likelihood may have been remote, West might have posed a legitimate safety threat to those in the courthouse. She had already set off the metal detectors, and her bulky coat could disguise any manner of contraband or weaponry. Accordingly, “a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger,” which is all the Constitution required. See Terry, 392 U.S. at 27, 88 S.Ct. 1868. And the fact that West was uncooperative makes it even easier to understand Davis’s reaction.[7] Under the circumstances—and with others waiting to proceed through security—it was not unreasonable for Davis to conclude, in his words, that he needed to “regain control of the situation” by ending West’s phone call and turning attention to other visitors.
I do not mean to undermine West’s grievance here. In retrospect, it is easy to assume that Davis overreacted to West’s lack of cooperation, certainly given West’s injury. Yet we must resist the temptation to “hold in hindsight that defendant’s [actions] were improper.” Harper v. Davis, 571 Fed.Appx. 906, 2014 WL 3377613, at *7 (11th Cir.2014) (citing Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir.2009)) (punctuation revised). Adopting that approach, and considering Davis’s un-controverted need to maintain security at the courthouse, his decision was not unreasonable under the circumstances. That being the case, West has not alleged a Fourth Amendment violation.
II.
Davis contends that if this Court should “determine that West stated a claim that she was seized within the meaning of the Fourth Amendment, then it should conclude that no clearly established law placed Davis on notice that his actions constituted a seizure.” I agree and see no *1079 reason for not reaching the issue of whether he is entitled to qualified immunity.[8] “The doctrine of qualified immunity protects government officials ‘from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). “Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,” and “protects ‘all but the plainly incompetent or those who knowingly violate the law.’ ” Ashcroft v. al-Kidd, — U.S.-, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Because there is no dispute that Davis was acting within his discretionary authority, West bears the burden of showing that Davis is not entitled to qualified immunity. Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir.2003). To overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right, and then must show that the governing law “was clearly established ... in light of the specific context of the case.” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). West has not done so here.
West has not identified any remotely analogous case that might clearly establish the governing law in a contextually specific way. Before withholding qualified immunity, we must find the law so well settled that Davis had “fair notice” of a particular right and any associated legal obligations. Camreta v. Greene, 563 U.S. -, 131 S.Ct. 2020, 2032, 179 L.Ed.2d 1118 (2011). The contours of the governing law must have been “sufficiently clear that every reasonable official” would have recognized the disputed conduct as violative of a constitutional right. al-Kidd, 131 S.Ct. at 2083 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted). This is not to say that West must identify “a case ‘on all fours,’ with materially identical facts,” to prevail at this stage. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir.2004). Nevertheless, she must identify precedent sufficient to provide “reasonable warning that the conduct at issue violated constitutional rights.” United States v. Lanier, 520 U.S. 259, 269, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Here, not only does West fail to identify any contextually similar case but, as explained in section I.A., the few authorities she offers are not analogous in any materially useful respect. She identifies no judicial decision addressing a highly secure facility, a possible breach of its rules by a visitor, or the momentary use of injurious physical force by law enforcement. As a consequence, she has not shown how the law is so clearly established that Davis would have had fair notice of his constitutional obligations.
To the extent that analogous case law exists, it weighs in favor of Davis. Because of the paramount importance of courthouse security, courts have generally withheld qualified immunity only where courthouse staff acts without provocation *1080 or where the visitor is not given an opportunity to comply with a request before force is used. See Stanley v. Muzio, 578 F.Supp.2d 443, 448-49 (D.Conn.2008) (rejecting a qualified immunity defense in part because officers acted unreasonably in “wrestling [plaintiff] to the ground and then kicking him in the head and back” without warning); Primm v. Cnty. of Du-Page, No. 92 C 3726, 1993 WL 5931, at *7 (N.D.Ill. Jan. 6, 1993) (withholding qualified immunity where officer tackled plaintiff “without warning or provocation and without being given the opportunity to leave the building”). Otherwise, the § 1983 claim is dismissed or summary judgment is granted to the defendant.
For example, one court officer “forcefully grabbed” and arrested an attorney who did not display identification at the security checkpoint, and who ignored requests to leave the premises. See generally Usiak v. Brown, No. RDB-10-2374, 2011 WL 3705349, at *2 (D.Md. Aug. 23, 2011).[9] The attorney was released several hours later, when authorities found no probable cause to support arrest. Ibid. The attorney then filed suit, alleging various constitutional and statutory violations. Ibid. Notwithstanding the lack of probable cause, the district court ultimately dismissed his § 1983 claim under Rule 12(b)(6), noting that the defendants would be entitled to qualified immunity even if the arrest could be construed as unreasonable. Id. at *5. Similarly, a Texas court granted summary judgment after finding force “not excessive as a matter of law” where court officials had subjected a partially paralyzed man to “excruciating pain” by forcibly removing him from the premises for bringing a documented service dog into the building. See generally Pena v. Bexar Cnty., Tex., 726 F.Supp.2d. 675, 680, 692 (W.D.Tex.2010). The court found the force reasonable in part because the plaintiff was “uncooperative and refuse[d] to leave voluntarily.” Id. at 692.
In much the same way, West was uncooperative in refusing to remove her jacket and in failing to discontinue use of the phone. She received a warning regarding the phone call, and she was given an opportunity to leave the premises or discontinue the call on her own before Davis turned to physical force to terminate the call. Accordingly, existing jurisprudence does not establish a clear violation of West’s rights, but instead suggests that there was no violation at all. I am aware of no authority that suggests Davis’s decision was “plainly incompetent” or that prohibits his actions in such a way that “every reasonable official” would have deemed his conduct unconstitutional. al-Kidd, 131 S.Ct. at 2083, 2085. Accordingly, West has not overcome the qualified immunity defense. Davis is therefore entitled to summary judgment, even if we assume he seized West’s person.
III.
West’s § 1983 claim also fails when analyzed under the Fourteenth Amendment. If I am correct that West was not seized, Davis’s use of force is governed by that Amendment’s substantive due process standard. Graham, 490 U.S. at 393-95, 109 S.Ct. 1865. The Fourteenth Amendment dictates that “[n]o State shall ... deprive any person of life, liberty, or property, without due process of law.” U.S. Const, amend. XIV, § 1. Implicit in that guarantee is the Constitution’s “protection *1081 of the individual against arbitrary action of government.” Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Yet “only the most egregious official conduct can be said to be ‘arbitrary in the constitutional sense.’ ” Lewis, 523 U.S. at 846, 118 S.Ct. 1708 (quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Accordingly, excessive force by a police officer only violates the Fourteenth Amendment if it truly “shocks the conscience.” Ibid. Force is conscience-shocking where it is used “maliciously and sadistically to cause harm.” Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir.2009). Where the object of the force is not in custody, even force applied with “deliberate indifference” does not run afoul of the constitution. Lewis, 523 U.S. at 851, 118 S.Ct. 1708.
Even liberally construing the complaint and record in favor of West, any Fourteenth Amendment argument fails as a matter of law. To forestall summary judgment, West’s complaint “must include the specific, non-conclusory allegations of fact” that, if proven, establish the asserted constitutional violation.” Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir.2003) (quoting Veney v. Hogan, 70 F.3d 917, 922 (6th Cir.1995)). As the district court and the majority of this panel have already explained, West has not adequately alleged malice on Davis’s part. See Maj. Op. at 1071-72; District Court Order 11-12. Her complaint’s only reference to malice, ¶ 41, is unsupported and wholly conclusory. In addition, she has not pleaded any facts from which that we might infer the requisite malice. Compare Simpson v. Hines, 903 F.2d 400, 403 (5th Cir.1990) (inferring conscience-shocking malice where decedent was recorded screaming in pain and begging for mercy before he ultimately succumbed to traumatic asphyxiation), with Meals v. City of Memphis, 493 F.3d 720, 731 (6th Cir.2007) (declining to infer malice where motorist was killed during a high-speed chase that contravened multiple department policies).
Moreover, this Court has consistently held that the type of injury West suffered is not egregious enough to violate the Fourteenth Amendment. For example, an instructor at a military academy slammed a door into a female student, thereby shattering the door’s glass window and trapping her arm in the broken glass. Dacos-ta, 304 F.3d at 1047. While her arm was still trapped, the instructor continued to slam the door into her body until he was physically restrained by several male students. Ibid. The young woman required extensive medical treatment, and the instructor was charged with criminal battery. Ibid. When a district court denied a motion to dismiss her subsequent § 1983 claim, this Court reversed. Id. at 1046-47. Although we conceded that the defendant had likely violated state law, we ultimately concluded that the “alleged conduct fails to rise to the level of ‘conscience-shocking’ so as to state a claim of substantive due process.”[10] More recently, we found no conscience-shocking misuse of force where a plaintiff suffered an injured rotator cuff after being assaulted by a county attorney, and we affirmed the district court’s dismissal of the claim under Rule 12(b)(6). See generally McCray v. Howard, 285 Fed.Appx. 689 (11th Cir.2008).
Returning to the present case, West alleges that Davis wrenched her hand and injured her wrist. There is little doubt such behavior is unseemly, and is likely an assault or battery under state law. But because Davis’s conduct was not eon- *1082 science-shocking, his use of physical force did not violate the Fourteenth Amendment. I therefore agree with the district court that West’s § 1983 claim fails as a matter of law.[11] Accordingly, I would affirm summary judgment.

. Any reliance on Gennusa v. Canova, 748 F.3d 1103 (11th Cir.2014), is therefore misplaced. Regardless, even if West had argued that the cell phone was seized, I would find the officer entitled to qualified immunity for the reasons stated herein.

. The facts of the case were presented in an earlier decision. See Headwaters Forest Def. *1076 v. Cnty. of Humboldt, 240 F.3d 1185, 1191-95 (9th Cir.2000), vacated for application of new precedent, 534 U.S. 801, 122 S.Ct. 24, 151 L.Ed.2d 1 (2001), and disposition reinstated on remand, 276 F.3d 1125.

. It is occasionally difficult to discern the meaning of West's assertions, so it is possible that she thought she raised this argument. Given the lack of clarity and lack of legal support, however, to whatever extent she intended to raise this argument, it was not adequately briefed and is therefore waived. See Fed. R.App. P. 28(a)(8).

. Terry, 392 U.S. at 30, 88 S.Ct. 1868. I do not consider here the possibility that the exceptional importance of courthouse security renders reasonable suspicion unnecessary. Cf. Skinner v. Ry. Labor Executives’ Ass’n, 489 U.S. 602, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ("In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.”).

. West submitted photos of the coat and the undershirt, and has confirmed that the ribbed neckline and sleeves were visible.

. The parties disagree as to how many times West was instructed to get off the phone, but West’s complaint indicates that she was told to do so at least once, and that Davis walked away and returned before ultimately terminating the call himself.

.The x-ray operator reported that she had never before seen any courthouse visitor so patently ignore a request to terminate a phone call. West has not commented on this testimony, and does not deny that she disregarded Davis's instructions.

. I disagree with the majority’s position that we should not address the issue of whether Davis is entitled to qualified immunity. I am of the view that we should address the issue because it was raised in the district court and on appeal, and the record is sufficiently developed. Moreover, we have expended much ink in determining whether a seizure has occurred within the meaning of the Fourth Amendment. Accordingly, I see no reason to decline to address the issue of qualified immunity which is properly before us on appeal.

. Although courts must rely only on authority in existence at the time of the disputed conduct to find that the governing law was clearly established, courts may consider newer authority as evidence that it was not. See Wilson v. Layne, 526 U.S. 603, 614, 617-18, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

. Id. at 1048. The Court denied rehearing en banc, 52 Fed.Appx. 489, and the Supreme Court denied certiorari, 538 U.S. 908, 123 S.Ct. 1489, 155 L.Ed.2d 228 (2003).

. I do not consider qualified immunity with respect to the Fourteenth Amendment. Whereas West’s complaint might allege a Fourth Amendment violation if we assume the physical contact was a seizure, I see no way, consistent with this Court’s precedent, to construe West’s allegations as stating a cognizable Fourteenth Amendment claim. There is thus no reason need to consider qualified immunity. See Saucier, 533 U.S. at 201, 121 S.Ct. 2151 (“If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.”).